[Civ. No. 29967.   Second Dist., Div. Four.   June 20, 1967.]

TOKUZO SHIDA, Plaintiff and Respondent, v. JAPAN FOOD CORPORATION, Defendant and Appellant.

Yonemura & Yasaki and Joe J. Yasaki for Defendant and Appellant.

Wolver & Wolver and Eugene L. Wolver for Plaintiff and Respondent.

FILES, P. J.—This is an action for damages for unfair competition, between two competing distributors of Japanese food products. The gravamen of the complaint is that, in 1959, defendant induced the manufacturer of Ko-Ko brand takuwan to discontinue business with plaintiff and deal with defendant exclusively thereafter.

Takuwan is a pickled turnip or radish which is a common item of Japanese food. Prior to 1952 it was being imported into California from Japan packed in wooden tubs and small cans, but there was no market in the United States for taku-

wan of Hawaiian origin. In February 1952, Waimanalo Ko-Ko Company, of Hawaii, arranged with plaintiff (who does business under the name of Star Rice Company) to undertake the distribution of Ko-Ko brand takuwan, which is made in Hawaii and packed in glass jars. This arrangement was evidenced by a writing, the full text of which is: "We hereby agree to give Star Rice Company of 204 So. San Pedro St, Los Angeles, California the exclusive rights of distributing the Waimanalo Ko-Ko pickled turnips on the mainland from February 11, 1952, to February 11, 1953.

"Waimanalo Ko-Ko Co.
[Signed] Richard K. Kiyota"

Each year thereafter, through 1958, a similar writing was executed. The last such contract was in this form: "The Waimanalo Ko-Ko Co. gives Star Rice Co. the exclusive right to distribute the Ko-Ko brand Pickled Radish on the mainland from Jan 28, 1958 to Jan. 28, 1959.

"Waimanalo Ko-Ko Co.
[Signed] R. Kiyota
R. Kiyota"

During the period from 1952 to 1958 plaintiff was successful in marketing the product. Gross sales by Waimanalo to plaintiff grew from $8,650 in 1952 to approximately $40,000 in 1958.

Defendant was organized in 1958 as a merger of three companies engaged in the business of importing and distributing Japanese food. Early in 1958 a representative of one of the merging companies visited Hawaii and urged Waimanalo to distribute its takuwan through the defendant company. As a result of this inducement, Waimanalo declined to renew its agreement with plaintiff in 1959. On February 4, 1959, Waimanalo Ko-Ko Company entered into an exclusive distributorship agreement with defendant, effective March 1, 1959.

The trial court found that, but for defendant's conduct, Waimanalo would have continued its business relationship with plaintiff, and that the sum of $24,000 was a reasonable value for the market for bottled takuwan existing in the United States by reason of the efforts of the plaintiff, and that the same was the amount of profit which plaintiff would have received had its distributorship continued for a period of four more years. Judgment was entered in favor of plaintiff and against defendant Japan Food Corporation in the amount of $24,000.

Defendant is appealing from this judgment.

.. It is first necessary to examine the relationship between plaintiff and Waimanalo Ko-Ko Company at the time of the alleged tort. In answer to an interrogatory submitted prior to trial, plaintiff stated that his contract with Waimanalo Ko-Ko Company was ''entirely in writing.'' The seven annual agreements were tendered as all of the contracts between plaintiff and his supplier. Each contract, on its face, carries a specific termination date. Waimanalo Ko-Ko Company therefore was not guilty of any breach of contract in refusing to deal with plaintiff after the expiration date shown in the last contract, namely January 28, 1959. (*A.B.C. Distributing Co.* v. *Distillers Distributing Corp.*, 154 Cal.App.2d 175, 183 [316 P.2d 71].)

Even though plaintiff's distributorship was subject to termination on January 29, 1959, at Waimanalo's will, plaintiff was not without legal protection against unjustified interference by third parties. ■ It is well established that unjustified interference with an advantageous business relationship is actionable even though no breach of contract is involved. (*Speegle* v. *Board of Fire Underwriters*, 29 Cal.2d 34, 39 [172 P.2d 867]; *Zimmerman* v. *Bank of America*, 191 Cal.App.2d 55, 57 [12 Cal.Rptr. 319]; *Romano* v. *Wilbur Ellis & Co.*, 82 Cal.App.2d 670, 673 [186 P.2d 1012]; Rest., Torts, § 766.)

The critical issue here is whether the interference was unjustified. In determining this question we must observe an important distinction between interference with a contract and interference with relationships which can be disturbed without a breach of contract: In the latter situation the law recognizes more extensive privileges to interfere for the sake of competition.

In *Imperial Ice Co.* v. *Rossier*, 18 Cal.2d 33, 36 [112 P.2d 631], the court said: ''Whatever interest society has in encouraging free and open competition by means not in themselves unlawful, contractual stability is generally accepted as of greater importance than competitive freedom. Competitive freedom, however, is of sufficient importance to justify one competitor in inducing a third party to forsake another competitor if no contractual relationship exists between the latter two.''

See also *Buxbom* v. *Smith*, 23 Cal.2d 535, 546 [145 P.2d 305]; *Show Management* v. *Hearst Publishing Co.*, 196 Cal. App.2d 606, 618 [16 Cal.Rptr. 731]; *Katz* v. *Kapper*, 7 Cal. App.2d 1, 4 [44 P.2d 1060]; Prosser, Law of Torts (3d ed. 1964) § 124, pp. 979-981.

Section 768 of the Restatement of Torts states:

"(1) One is privileged purposely to cause a third person not to enter into or continue a business relation with a competitor of the actor if

"(a) the relation concerns a matter involved in the competition between the actor and the competitor, and

"(b) the actor does not employ improper means, and

"(c) the actor does not intend thereby to create or continue an illegal restraint of competition, and

"(d) the actor's purpose is at least in part to advance his interest in his competition with the other.

"(2) The fact that one is a competitor of another for the business of a third person does not create a privilege to cause the third person to commit a breach of contract with the other even under the conditions stated in Subsection (1)."

In the case at bench it appears from the findings of the trial court that the award of damages rests exclusively upon the assumption that it was an actionable wrong to induce Waimanalo Ko-Ko Company not to renew its agreement with plaintiff. There is no finding that defendant used any improper means to persuade Waimanalo, or that any illegal restraint of competition was created, or that defendant had any purpose beyond the obvious objective of advancing its own interest as a competitor.

There is evidence that, during the period from 1952 to 1958, Waimanalo Ko-Ko Company was processing and selling to firms in Honolulu takuwan bottled under the trade names of "Daimaru" and "Hime." This product was resold in the United States through two of the predecessors of defendant Japan Food Corporation, in competition with the Ko-Ko brand sold by plaintiff. The labels on these bottles failed to disclose the name of the processor, and plaintiff's efforts during this period to discover the source of this competitive product were unsuccessful. When plaintiff inquired of Waimanalo, the latter replied that it had investigated but was unable to find out.

The findings of the trial court are unspecific as to the conditions under which defendant's predecessors obtained this competitive product, or what knowledge they had as to its real origin, or exactly what knowledge they had as to the terms of the plaintiff's franchise—particularly whether it understood plaintiff had exclusive rights to all Waimanalo output or only to the Ko-Ko label. It is plain that the judgment does not rest at all upon any damage sustained by reason of any competi-

tive sale of takuwan during the period prior to January 29, 1959. It is thus unnecessary to attempt to analyze now the effect of the evidence upon that subject.

The judgment is reversed.

Jefferson, J., and Kingsley, J., concurred.

A petition for a rehearing was denied July 7, 1967, and respondent's petition for a hearing by the Supreme Court was denied September 13, 1967.