[Civ. No. 34036. Second Dist., Div. Four. Dec. 18, 1969.]

CHARLES C. CHAPMAN BUILDING COMPANY,
Plaintiff and Appellant, v.
CALIFORNIA MART et al., Defendants and Respondents.

COUNSEL

Monta W. Shirley, George W. Nilsson and Mark G. Ancel for Plaintiff and Appellant.

Katz, Hoyt & Blum, Charles J. Katz and Louis C. Hoyt for Defendants and Respondents.

OPINION

DUNN, J.—Appellant owns and operates an office and commercial building known as the "Chapman Building," located at 756 South Broadway, Los Angeles. Prior to 1955, the Chapman Building was occupied mainly by professional tenants, such as doctors, dentists, attorneys and accountants. In 1955 a number of sales representatives of wholesalers and manufacturers of children's wear approached the owners of the Chapman Building and requested office space. Pursuant to such request, the owners moved the sixth floor tenants to other floors in order to house children's wear representatives on that floor. This removal was necessary as it was not possible to house these two types of tenants on the same floor because of the physical differences between the types of offices required by the professions and by the apparel representatives. In order to meet the needs of the children's wear tenants, the premises were altered by such means as removing walls, changing doorways and lighting, and installing asphalt tile flooring. Gradually, as more representatives of the children's wear industry requested to move into the Chapman Building, the process of emptying floors of professional tenants and making alterations continued until eight of the twelve floors of the Chapman Building were occupied exclusively by children's wear representatives. The total cost to appellant of making the necessary alterations was approximately $300,000. By 1963 a substantial number of children's wear representatives in Los Angeles had offices in the Chapman Building. All of these tenants had executed written leases for terms varying from two to five years. Most of the leases were renewed at least once, and some as many as three times.

In January 1964 respondents completed a building known as the "California Mart," located at the southeast corner of Main and East Ninth Streets in Los Angeles. This building was constructed for the primary purpose of catering to, and housing offices and showrooms for, manufacturers, wholesalers and distributors engaged in various branches of the apparel industry and trades. The California Mart was a modern building with central air-conditioning, inside parking and many conveniences

attractive to tenants and their customers. The Chapman Building, approximately 50 years old in 1964, had no automatic elevators, central air-conditioning or inside parking, and lacked other modern conveniences.

Respondents competed with appellant for tenants, and solicited persons occupying space in the Chapman Building to enter into leases for space in the California Mart. In soliciting appellant's tenants, respondents were aware that most of them occupied space in the Chapman Building either as month-to-month tenants or under leases, many of which had unexpired terms. Respondents granted to these tenants, including some of the recognized leaders in the children's wear industry, various allowances and concessions as an inducement to lease space in the California Mart. Such allowances and concessions included: (1) credits for a part or all of the rent which the tenant was obligated to pay for the remaining term of his lease with appellant; (2) allowances for improvements to be made by the tenant in the space leased to him in the California Mart; (3) cash refunds if the tenant fulfilled the obligations under his lease agreement with respondents; (4) contributions to lump sum payments to be made by the tenant to pay appellant in full all of the remaining rent due under the tenant's lease with appellant; (5) allowances and credits of fixed amounts for defined periods against the rent payable under the tenant's lease with respondents; or (6) assumptions by respondents of payment of all or part of the rent due appellant under its lease with the tenant.

In December 1963 appellant received notice from some of its children's wear tenants that they intended to move. Thereafter, a large number of such tenants moved to the California Mart. At the time of their removal, some of these tenants had been occupying space in the Chapman Building as month-to-month tenants, and others had been occupying under written leases. Some of the latter group moved at or about the time their leases expired, and some moved before their leases expired. By 1968 practically all of the children's wear representatives who had been tenants of the Chapman Building in 1963 and 1964 had moved to the California Mart.

Appellant commenced this action for declaratory relief, for damages based upon contract interference and for an injuction. The cause was tried without a jury. At the conclusion of appellant's case, respondents moved for judgment pursuant to Code of Civil Procedure, section 631.8.[1] The motion

---

[1]Section 631.8. "After a party has completed his presentation of evidence in a trial by the court, the other party . . . may move for a judgment. The court as trier of the facts shall weigh the evidence and may render a judgment in favor of the moving party, in which case the court shall make findings as provided in Sections 632 and 634 of this code, or may decline to render any judgment until the close of all the evidence. . . .

"If the motion is granted, unless the court in its order for judgment otherwise specifies, such judgment operates as an adjudication upon the merits."

was granted. Findings of fact and conclusions of law were signed and judgment entered for respondents. This appeal is from the judgment.

I. *Did Respondents Cause the Children's Wear Tenants to Breach Their Respective Leases With Appellant?*

In order that a plaintiff may recover against a defendant for having caused a breach of contract, the plaintiff must show (1) that he had a valid and existing contract, (2) that the defendant had knowledge of the contract and intended to induce its breach, (3) that the contract was in fact breached by the other contracting party, (4) that the breach was caused by the defendant's unjustified and wrongful conduct, and (5) that plaintiff has suffered damage. *Springer* v. *Singleton* (1967) 256 Cal.App.2d 184, 187-188 [63 Cal.Rptr. 770, 27 A.L.R.3d 1220]; *Freed* v. *Manchester Service, Inc.* (1958) 165 Cal.App.2d 186, 189 [331 P.2d 689]. One of the essential elements of a cause of action for inducing a breach of contract is that the defendant had knowledge of the contract and intended to induce its breach. *Springer* v. *Singleton, supra,* 256 Cal.App.2d at page 188.

The findings of a trial court made after granting a motion for judgment pursuant to Code of Civil Procedure, section 631.8 are entitled to the same respect on appeal as are any other findings of a trial court, and are not erroneous if supported by substantial evidence. *Trigg* v. *Smith* (1966) 246 Cal.App.2d 510, 515 [54 Cal.Rptr. 858]; *Estate of Pack* (1965) 233 Cal.App.2d 74, 77 [43 Cal.Rptr. 361]; *Greening* v. *General Air-Conditioning Corp.* (1965) 233 Cal.App.2d 545, 550 [43 Cal.Rptr. 662]. Where two or more inferences reasonably can be drawn from the facts, an appellate court is without power to substitute its deductions for those of the trial court. *Trigg* v. *Smith, supra,* 246 Cal.App.2d 510, 515; *Leiter* v. *Eltinge* (1966) 246 Cal.App.2d 306, 313 [54 Cal.Rptr. 703]; *Woolliscroft* v. *Starr* (1964) 225 Cal.App.2d 667, 669 [37 Cal.Rptr. 570]. The rules applying to appellate review of a nonsuit granted in a jury trial are not applicable. *Columbia Engineering Co.* v. *Joiner* (1965) 231 Cal.App.2d 837, 842 [42 Cal.Rptr. 241]. We treat the court's findings made pursuant to granting a motion under Code of Civil Procedure, section 631.8 as though made after a trial in which evidence was produced by both sides; thus the evidence is viewed in the light most favorable to respondents. *Weinstock* v. *L. A. Carpet, Inc.* (1965) 234 Cal.App.2d 809, 811 [44 Cal.Rptr. 852].

The trial court found among other things that respondents "did not seek to, did not intend, and did not induce or cause any tenant occupying space in the Chapman Building to violate or breach his lease or contract" with appellant. We examine the record to ascertain if the finding is supported by the evidence. Eight of appellant's children's wear tenants who

had moved to the California Mart testified in substance as follows: Before completion of the California Mart, each was approached by a representative of the California Mart who pointed out the advantages which that building would offer to persons in the apparel industry. In some cases, the representative showed the tenant a brochure illustrating such advantages. At the time they were so contacted, some of these tenants had unexpired leases with the Chapman Building. In some instances these leases were discussed with the California Mart representative who offered various incentives for moving to the California Mart, such as: payment of all or a part of the rent due for the remainder of the tenant's lease with appellant, several months' free rent under the lease with respondents, or reimbursement for improvements which the tenant would make in space leased in the California Mart. In some cases, these offers were refused. Four of these witnesses testified that no one associated with the California Mart ever told him to breach his lease with appellant, or that he should not pay the rent due for the remaining term of such lease. Each month appellant's former tenants who had moved to the California Mart were sent statements for the rent due under their unexpired leases. Each of the witnesses who was questioned on the subject testified that he paid the entire rental due the Chapman Building under his lease. All testified that it is important for manufacturers' representatives in the apparel industry to be located in the same building, because it is more convenient for prospective buyers to contact all representatives at the same place. Some of the witnesses stated this was the reason they moved to the California Mart.

From the foregoing summary it is apparent that substantial evidence supports the finding that respondents did not intend to induce any breach of their respective leases by appellant's tenants. Hence, appellant has failed to prove one of the necessary elements of a cause of action for inducing a breach of contract. ■ ■ As stated in *Imperial Ice Co. v. Rossier* (1941) 18 Cal.2d 33 at pages 36 and 37 [112 P.2d 631]: "A person is likewise free to carrry on his business, including reduction of prices, advertising, and soliciation in the usual lawful manner although some third party may be induced thereby to breach his contract with a competitor in favor of dealing with the advertiser . . . . A party may not, however, under the guise of competition actively and affirmatively induce the breach of a competitor's contract in order to secure an economic advantage over that competitor. *The act of inducing the breach must be an intentional one. If the actor had no knowledge of the existence of the contract or his actions were not intended to induce a breach, he cannot he held liable though an actual breach results from his lawful and proper acts.*" (Italics added.) And at page 39, the court further stated: "*It is necessary to prove that [defendants] intentionally and actively induced the breach.*" (Italics added.)

■ The trial court also found that none of appellant's tenants who

moved to the California Mart had breached his lease with appellant. At the trial appellant asserted that the tenants breached their respective leases by (1) failing to pay rent for the unexpired terms of the leases, and (2) abandoning the premises. The court found that no tenant failed to pay rent due under his lease with appellant, further finding that the leases contained no covenant requiring the tenant to occupy the premises for the purpose stated in the lease, or for any purpose, until expiration of the term of the lease. The first part of this finding clearly is supported by the evidence, which reveals that several of appellant's tenants paid all rent due under their leases after moving from the Chapman Building, and does not show the failure of any tenant to pay rent.

As to the second part of the finding, appellant based its contention concerning abandonment on the two following provisions of the leases: "The premises hereby leased are to be used and occupied by Lessee as children's wear showrooms and for no other business or purpose without the written consent of Lessor"; and "[I]f Lessee vacates or abandons the leased premises, and among other things, absence of Lessee therefrom for a period of 10 days shall be considered such abandonment thereof, . . . it shall be lawful for the Lessor, by notice to Lessee in writing, to declare said leased term and this lease ended." Appellant argued that such provisions must be read together; that the tenants' failure to use the premises as children's wear showrooms constituted an abandonment and, ergo, a breach of the leases. This argument is without merit. ■ "[A] statement as to the purpose for which premises are leased does not imply a covenant by the lessee that he will engage in that use, but he may cease to use the premises for any purpose." *Lippman* v. *Sears, Roebuck & Co.* (1955) 44 Cal.2d 136, 142 [280 P.2d 775], and see: 30 Cal.Jur.2d 192, Landlord and Tenant § 63. ■ The trial court was correct in finding that none of appellant's tenants breached his lease, the only breaches claimed by appellant being nonpayment of rent and abandonment.

II. *Did Respondents Unjustifiably Interfere With the Business Relations of Appellant and Its Children's Wear Tenants?*

■ Unjustified interference with an advantageous business relationship is actionable even though no breach of contract is involved. *Shida* v. *Japan Food Corp.* (1967) 251 Cal.App.2d 864, 866 [60 Cal.Rptr. 43]; *Uptown Enterprises* v. *Strand* (1961) 195 Cal.App.2d 45, 51 [15 Cal. Rptr. 486]. The justification advanced is generally the right to conduct a business in competition with that of another. *Buxbom* v. *Smith* (1944) 23 Cal.2d 535, 546 [145 P.2d 305]. ■ The requirements for such justification are set forth in 4 Restatement of the Law of Torts (1939) § 768: "(1) One is privileged purposely to cause a third person not to

enter into or continue a business relation with a competitor of the actor if (a) the relation concerns a matter involved in the competition between the actor and the competitor, and (b) the actor does not employ improper means, and (c) the actor does not intend thereby to create or continue an illegal restraint of competition, and (d) the actor's purpose is at least in part to advance his interest in his competition with the other." This states the rule followed in California. *Herron* v. *State Farm Mut. Ins. Co.* (1961) 56 Cal.2d 202, 206 [14 Cal.Rptr. 294, 363 P.2d 310]; *Blank* v. *Palo Alto-Stanford Hospital Center* (1965) 234 Cal.App.2d 377, 385 [44 Cal.Rptr. 572]; *Hancock* v. *Burns* (1958) 158 Cal.App.2d 785, 794 [323 P.2d 456].

The following findings of the trial court establish that these requirements were met in this case: (1) In soliciting tenants of the Chapman Building and entering into leases with them, respondents acted without malice or intent to injure appellant, but solely to further their own economic interests as competitors of appellant; and (2) respondents did not use improper methods in connection with such solicitation; they employed no coercive measures, nor did they make any false statements or representations to any person concerning appellant corporation or its building, or concerning respondents, the California Mart building or its tenants.

There is sufficient evidence to support these findings. At trial, the deposition of a representative of the Chapman Building was read into the record. The representative there stated his belief that respondents were seeking to have appellant's tenants move to the California Mart for respondents' own economic advantage and not for the purpose of harming appellant. Another witness, a respondent who is a copartner in the California Mart, testified that respondents contacted the Chapman Building tenants, as well as other persons in the apparel trade, for the benefit of the California Mart. The evidence previously summarized shows respondents told appellant's tenants of the advantages which the California Mart could offer to persons in the apparel industry, showed them brochures illustrating such advantages and attempted to persuade the tenants to sign leases with the California Mart. Respondents offered concessions and allowances to induce the tenants to move. The record does not disclose any false statements or use of coercion by respondents in soliciting appellant's tenants.

Where no breach of contract is shown the law recognizes a more extensive privilege to interfere with business relations than where a breach appears. *Shida* v. *Japan Food Corp., supra,* 251 Cal.App.2d at page 866. If the means of interference involve no more than recognized trade practices such as advertising, solicitation, or reduction of prices a plaintiff's loss as a result of the competition is not actionable. *Buxbom* v. *Smith, supra,* 23

Cal.2d at page 546; *Imperial Ice Co.* v. *Rossier, supra,* 18 Cal.2d at pages 36-37. ■ The extent of privilege of competition is defined as follows in *Katz* v. *Kapper* (1935) 7 Cal.App.2d 1 at page 4 [44 P.2d 1060]: " 'Competition in business, though carried to the extent of ruining a rival, is not ordinarily actionable, but every trader is left to conduct his business in his own way, so long as the methods he employs do not involve wrongful conduct such as fraud, misrepresentation, intimidation, coercion, obstruction, or molestation of the rival or his servants or workmen, or the procurement of the violation of contractual relations. If the disturbance or loss comes as the result of competition, or the exercise of like rights by others, as where a merchant undersells or oversells his neighbor, it is *damnum absque injuria.*' " ■ The findings of the trial court, supported by substantial evidence, establish that respondents' acts in soliciting appellant's tenants were not unlawful, and were done to advance respondents' interests as competitors of appellant. Respondents' interference with the business relationship between appellant and its tenants was therefore privileged.

■ Appellant claims respondents exceeded the privilege of competition because they promised to hold the Chapman Building tenants harmless against breach of their leases with appellant. The contention apparently is based upon the following language in an agreement made by respondents with one of appellant's tenants: "Lessor [respondents] agrees to assume and pay all of Lessee's obligations under Lessee's existing lease [with appellant]." There is no mention of indemnity for any liability which the tenant might incur by breaching his lease with appellant. The agreement is one to assume and satisfy the tenant's obligations under the lease. It does not purport to indemnify him if he breaches the lease, and thus it does not conform to the definition of indemnity in Civil Code, section 2772: "Indemnity is a contract by which one engages to save another from a legal consequence of the conduct of one of the parties, or of some other person."

■ Appellant further contends that interference with its business relations was not privileged because respondents offered cash consideration and other inducements to those recognized leaders in the children's wear industry who were among appellant's tenants. Appellant's several cases cited in support of this contention do not present factual situations analogous to our case; all impose liability upon some ground not present here, such as: intent to inflict injury upon the business of a rival (*Wear-Ever Aluminum, Inc.* v. *Townecraft Industries, Inc.* (1962) 75 N.J. Super. 135 [182 A.2d 387] or intent to induce a breach of contract (*Gold Medal Farms, Inc.* v. *Rutland County Creamery, Inc.* (1960) 9 App.Div.2d 473,

10 App.Div.2d 584 [195 N.Y.S.2d 179]; *Mitchell* v. *Aldrich* (1960) 122 Vt. 19 [163 A.2d 833]). Appellant cites no authority, and we find none, holding that the means used by respondents to solicit appellant's tenants (cash payments, reduced rentals, reimbursement for improvements to be made or payment of all or part of the rent due appellant) are unlawful means of solicitation which destroy the privilege of competition. These means do not appear different in principle from price reduction, generally a lawful method of competition. *Buxbom* v. *Smith* (1944) *supra,* 23 Cal.2d 535, 546; *Imperial Ice Co.* v. *Rossier* (1941) *supra,* 18 Cal.2d 33, 36-37. We see no reason to apply a different standard because some of the solicited tenants were leaders in their industry.

*III. Did the Trial Court Commit Prejudicial Error in Denying Appellant's Motion to Reopen for the Purpose of Introducing Evidence of the Amount of Rent Unpaid by Its Former Tenants?*

 At the beginning of the trial, it was agreed by court and counsel that the issue of liability for interference with relationships would be tried first, separately from the issue of damages. The trial proceeded on that basis. After appellant had rested on the issue of liability, while arguing respondents' motion for judgment under Code of Civil Procedure section 631.8, appellant moved to reopen the case for the purpose of establishing that rent amounting to thousands of dollars had not been paid under the unexpired leases of tenants who had moved to the California Mart. The motion to reopen was denied, and appellant contends this was error.

 After a motion for nonsuit is made in a jury trial (Code Civ. Proc. § 581c), it is the trial court's duty, if so requested, to permit the plaintiff to reopen his case and introduce further evidence, since one of the objects served by the motion is to point out the oversights and defects in the plaintiff's proof so that he may supply, if possible, the specified deficiencies. 16 Cal.Jur.2d, Rev., 289, Dismissal and Nonsuit § 55. It is error to refuse plaintiff this privilege and, after such refusal, to grant a motion for nonsuit. *Eatwell* v. *Beck* (1953) 41 Cal.2d 128, 133-134 [257 P.2d 643]; *Low* v. *Warden* (1886) 70 Cal. 19, 21 [11 P. 350]; *Sferlazzo* v. *Oliphant* (1914) 24 Cal.App. 81, 86 [140 P. 289]. Assuming, without deciding, that this rule applies to a motion for judgment under Code of Civil Procedure section 631.8,[2] any error in refusing to allow appellant to

---

[2] A motion for judgment under Code of Civil Procedure, section 631.8 is not a motion for nonsuit, and evokes different procedures. *Guttman* v. *Howard Homes, Inc.* (1966) 241 Cal.App.2d 616, 618 [50 Cal.Rptr. 769]; 16 Cal.Jur.2d, Rev., Dismissal and Nonsuit § 41, pages 266-267. On appeal from a judgment entered pursuant to Code of Civil Procedure, section 631.8, the rules applicable to a motion for nonsuit do not apply. *Columbia Engineering Co.* v. *Joiner* (1965) 231 Cal.App.2d 837, 842 [42 Cal.Rptr. 241].

reopen the case and present further evidence must be prejudicial to warrant reversal (Cal.Const., art. VI, § 13; Code Civ. Proc. § 475), and appellant has the burden of establishing prejudicial error. *Perbost* v. *San Marino Hall-School* (1948) 88 Cal.App.2d 796, 801 [199 P.2d 701]; *Semple* v. *Andrews* (1938) 27 Cal.App.2d 228, 235 [81 P.2d 203]; 3 Witkin, Cal. Procedure (1954) Appeal § 100, page 2268. We conclude appellant has not sustained such burden.

 At the time of the argument on respondents' motion under Code of Civil Procedure, section 631.8, appellant's counsel stated that the complaint, alone, was evidence that rent due from some tenants was unpaid. The court disagreed, saying, "I can't accept that as evidence that any tenant didn't pay his rent when due," and inquired if there was any evidence of nonpayment. Counsel for appellant then asked for permission to reopen his case, saying he had not previously offered evidence of nonpayment in the belief it was not relevant in a bifurcated trial, where liability was first to be tried. The trial court denied the request, stating: ". . . that if there was evidence, I couldn't find in this record that it was induced by the defendants. . . . So far as reopening on the failure to pay rent, I would have to deny your motion on that. I don't think it would change the case in any event." Furthermore, the court pointed out, appellant's motion was not timely since, at the beginning of the trial, counsel stated that the breaches of lease complained of were (1) abandonment and (2) failure to pay rent; hence, that failure to pay rent was pertinent to the issue of liability.

If the motion had been granted, and appellant had introduced the evidence offered, we assume that a tenant's breach of his lease by failure to pay rent would have been established. Such breach, however, would not render respondents liable, unless intentionally induced by them (*Imperial Ice Co.* v. *Rossier, supra,* 18 Cal.2d at p. 37); and, as previously demonstrated, there was substantial evidence to support the finding that respondents did not intend to cause any tenant of the Chapman Building to breach his lease. From this, it follows that the judgment would have been proper even if appellant had proved nonpayment of rent by some of its former tenants. Accordingly, no prejudicial error resulted from denial of the motion to reopen. *Sample* v. *S. H. Kress & Co.* (1961) 190 Cal.App.2d 503, 508 [12 Cal.Rptr. 198].

The judgment is affirmed.

Files, P. J., and Kingsley, J., concurred.

A petition for a rehearing was denied January 5, 1970, and appellant's petition for a hearing by the Supreme Court was denied February 13, 1970. Peters, J., was of the opinion that the petition should be granted.