[Civ. No. 39343. Second Dist., Div. Five. Sept. 12, 1972.]

A. F. ARNOLD & CO., LTD., Plaintiff and Appellant, v. PACIFIC PROFESSIONAL INSURANCE, INC., et al., Defendants and Respondents.

## COUNSEL

Luckman, Fenton & Lieber and Fred C. Fenton for Plaintiff and Appellant.

Jones & Wilson, James T. Hudson, Paul, Hastings, Janofsky & Walker, Oliver F. Green, Jr., and Geoffrey L. Thomas, for Defendants and Respondents.

## OPINION

**COLE, J.**\*—Plaintiff corporation appeals from a judgment entered against it after demurrers to its first amended complaint were sustained without leave to amend.

Reference is hereafter to plaintiff's first amended complaint. Plaintiff alleged that it conducted a business as a surplus line broker and general agent; that since 1962 it had obtained for the Stacker Foundation, doing business as Bon-Air Hospital, liability, comprehensive hospital and malpractice insurance; that it had spent much time, money and effort in developing, servicing and maintaining the account; that its insurance business is such that its policyholders, including Stacker, regularly renew their policies; that plaintiff has a vested interest in said renewal, insofar as by contract plaintiff receives a renewal commission from the renewal premium, and that the business relationship established between it and the Stacker Foundation "would ordinarily have continued unless so interfered with by defendants."

Concerning defendants, plaintiff alleged that Pacific Professional Insurance, Inc. (Pacific) and Signal Insurance Company (Signal) are each corporations; that Pacific was managing underwriter and agent for Signal; that defendants quoted a price for insurance coverage for Stacker to plaintiff and agreed to write policies showing plaintiff as broker of record and then subsequently refused to do so; that thereupon, plaintiff obtained a letter from Realty Insurance Associates (not a party herein), insurers and agents for Stacker, denominated as a "broker-of-record" letter, authorizing plaintiff to write liability and malpractice insurance for Stacker, and that eight days later it obtained a second such letter authorizing plaintiff to act as exclusive broker-of-record for Stacker.[1]

---

\*Assigned by the Chairman of the Judicial Council.

[1]Defendant Signal improperly argued to the trial court, and improperly argues to us, that the second letter did not confer any "exclusive" right on plaintiff. On

Plaintiff then alleges that on a date 11 days after the second letter, defendants, through Realty Insurance Associates, bound their coverage for liability, comprehensive hospital and malpractice policies for Realty Insurance Associates covering the Bon-Air Hospital and subsequently issued their policies. The complaint then alleges that defendants refused "to honor" the broker-of-record letters and to pay plaintiff the commissions on the policies even though defendants knew of said letters prior to the date that defendants bound their coverage for the insurance. Plaintiff's conclusion is that defendants have intentionally and wrongfully interfered with plaintiff's business relationship and deprived it of premiums.

Defendant's argument accepted by the trial court and repeated here, is that plaintiff did not allege any *facts* to show that defendants used improper methods in securing insurance coverage. In this connection, Signal argues that its refusal to deal with plaintiff was not tortious and that plaintiff did not allege any facts showing that anything done by Signal was the proximate cause of damage to plaintiff. Finally, Signal states that a competitive privilege is available unless illegal and improper conduct is involved. Pacific makes much the same argument—that its alleged interference with plaintiff's business relationship with Stacker simply amounted to Pacific's "refusal to do business with plaintiff and that only conclusions are alleged." Pacific also argues that as a competitor it did not use improper means but simply competed with plaintiff.

The argument of defendants that plaintiff fails to allege facts showing any wrongful conduct on defendants' part is inextricably bound up with defendants' claim that as competitors they were justified in their conduct by reason of their business situation vis-à-vis plaintiff.

In its opening brief, plaintiff argued, among other things, that defendants were not competitors. In its reply brief, plaintiff grudgingly conceded that Pacific "could perhaps be classed as a competitor" but that Signal is not such. It is clear, however, that the actions of each defendant were undertaken in the context of a business situation where for their own business purposes defendants did something which caused harm to plaintiff in its business. It is also clear that defendants acted for economic gain. Therefore, defendants are in a position where justification may be a defense to this action. (See Prosser, Torts (4th ed.) pp. 953-954.)

We must decide, however, whether it is a defense which can be considered on demurrer. *Herron* v. *State Farm Mutual Ins. Co.*, 56 Cal.2d

demurrer the matters alleged are deemed to be true and it is improper for a defendant to go outside the record as Signal tries to do here. Therefore, we ignore Signal's contentions in this respect.

202 [14 Cal.Rptr. 294, 363 P.2d 310], involved the tort of intentional interference with an existing contractual relationship. The court stated (pp. 206-207): "Whether an intentional interference by a third party is justifiable depends upon a balancing of the importance, social and private, of the objective advanced by the interference against the importance of the interest interfered with, considering all circumstances including the nature of the actor's conduct and the relationship between the parties. [Citations.] Justification is an affirmative defense and may not be considered as supporting the trial court's action in sustaining a demurrer unless it appears on the face of the complaint. [Citations.]" For a holding of this court to the same effect see *Greenberg* v. *Hollywood Turf Club,* 7 Cal. App.3d 968, 974 [86 Cal.Rptr. 885].

Is this principle equally applicable to a claim of interference with prospective economic advantage such as the right to pursue a lawful business? We hold, for reasons to be expressed, that while defendant's culpable *intent* is an element of the cause of action to be pleaded and proved by plaintiff, defendant's *justification* is an affirmative defense in the tort of interference with prospective economic advantage just as it is in the tort of interference with an existing contractual relationship.[2]

A few preliminary remarks as to the nature of the tort of interference with prospective economic relationship put into perspective our conclusions on this subject. The tort in general parallels the more established cause of action dealing with interference with existing contracts.[3]

The tort is a developing one. "The wrong consists of intentional and improper methods of diverting or taking business from another which are not within the privilege of fair competition. The test is admittedly vague, and the applications are difficult to classify, but the law is developing at a rapid rate." (2 Witkin, Summary of Cal. Law, pp. 1332-1333.)

Opinions discussing the tort of interference with prospective economic advantage often insert into their descriptions the word "unjustified." Thus, in *Speegle* v. *Board of Fire Underwriters,* 29 Cal.2d 34, 39 [172 P.2d 867], the court stated that "unjustified" interference is actionable. See also: *Shida* v. *Japan Food Corp.,* 251 Cal.App.2d 864, 866 [60 Cal.Rptr. 43]: "It is well established that unjustified interference with an advan-

---

[2]If justification appears on the face of the complaint, then it may be considered on demurrer. (See *Herron* v. *State Farm Mutual Ins. Co.,* 56 Cal.2d 202, 207 [14 Cal.Rptr. 294, 363 P.2d 310] and *Chicago Title Ins. Co.* v. *Great Western Financial Corp.,* 69 Cal.2d 305 [70 Cal.Rptr. 849, 444 P.2d 481].)

[3]For a concise and informative review of the development of the tort of interference with prospective economic advantage see Prosser, Torts (4th ed.), page 949, et seq.

tageous business relationship is actionable even though no breach of contract is involved." *Diodes, Inc.* v. *Franzen,* 260 Cal.App.2d 244, 255 [67 Cal.Rptr. 19]: "As a general principle, one who unjustifiably interferes with an advantageous business relationship to another's damage may be held liable therefor." *Masoni* v. *Board of Trade of S.F.,* 119 Cal. App.2d 738, 741 [260 P.2d 205]: "Actionable interference of this kind is not limited to inducing breach of an existing contract or other wrongful conduct but comprises also unjustifiably inducing a third person not to enter into or continue a business relationship with another."

If we read such statements to mean that lack of justification is an element of the cause of action, then of course, a plaintiff would have to plead and prove that negative. Such a reading would ignore the established principle that when an *existing* contractual relationship is involved, justification for interfering with it is an affirmative defense. (*Herron* v. *State Farm Mutual Ins. Co., supra,* 56 Cal.2d 202; *Greenberg* v. *Hollywood Turf Club, supra,* 7 Cal.App.3d 968, *Freed* v. *Manchester Service, Inc.,* 165 Cal.App.2d 186, 190 [331 P.2d 689]; *Culcal Stylco, Inc.* v. *Vornado, Inc.,* 26 Cal.App.3d 879 [103 Cal.Rptr. 419].) To treat lack of justification as an element of the tort when it is a *prospective* advantage that is involved would create an additional and unwarranted difference between the two torts.

We are talking, however, about an intentional tort.[4] We believe that it is precisely at the point where the intentional nature of the defendant's conduct relates to his justification for so acting that a distinction must be drawn. The one significant difference between the two torts is that when it is a prospective advantage that has been interfered with the law recognizes more extensive privileges to interfere for the sake of bona fide[5] competition. (*Shida* v. *Japan Food Corp., supra,* p. 866; *Greenberg* v. *Hollywood Turf Club, supra*; *Imperial Ice Co.* v. *Rossier,* 18 Cal.2d 33, 36 [112 P.2d 631].) This difference arises from the fact that the interest interfered with, being only *prospective,* weighs less on the scale than does an *existing* interest. Consequently, conduct claimed to constitute justification by way of competition can itself be less compelling and still support the defense.

The balancing act referred to in *Herron* v. *State Farm Mutual Ins. Co., supra,* 56 Cal.2d 202, 207, is just as important in considering the tort at

---

[4]See Prosser, *supra,* page 952, for a discussion of a few cases dealing with negligent interference with another's contract.

[5]See Prosser, *supra,* page 955.

bench as when a present contractual relationship is the offended interest. The scale may be weighted a little more heavily on the side of the defendant when a prospective interest is involved but it is still just as difficult for the weighing to be done on the basis of a complaint and demurrer.

On the other hand, it is necessary to avoid a situation where every bona fide competitor might find himself put to justifying the conduct of his business at the whim of a rival. Such a situation would tend to stifle the socially desirable process of competition. Where only a bona fide competitive situation is alleged, and no more, no cause of action would seem to exist. "No case has been found in which intended but purely incidental interference resulting from the pursuit of the defendant's own ends by proper means has been held to be actionable.

"[T]he cases have turned almost entirely upon the defendant's motive or purpose, and the means by which he has sought to accomplish it. As in the case of interference with contract, any manner of intentional invasion of the plaintiff's interests may be sufficient if the purpose is not a privileged one. Apart from this, however, the means adopted may be unlawful in themselves; and violence or intimidation, defamation, injurious falsehood or other fraud, violation of the criminal law, and the institution of threat of groundless civil suits or criminal prosecutions in bad faith, all have been held to result in liability." (Prosser, *supra*, pp. 952-953.)

"[A]n action for interference with prospective business advantage . . . will lie on common law principles where the right to pursue a lawful business is intentionally interfered with either by unlawful means, or by means otherwise lawful when there is lack of sufficient justification . . . ." (*Chicago Title Ins. Co.* v. *Great Western Financial Corp.*, 69 Cal.2d 305, 319 [70 Cal.Rptr. 849, 444 P.2d 481]. See Rest., Torts, § 766: "One who, without a privilege to do so, induces or otherwise purposely causes a third person not to . . . (b) enter into or conduct a business relation with another is liable to the other for the harm caused thereby.")

█ Thus, while no particular language should be required, the facts pleaded by a plaintiff must show an intent to do something which takes the defendant's acts beyond those of a mere competitor securing business for himself.[6]

The nature of the conduct which is acceptable today may, on examina-

---

[6]In *Shida* v. *Japan Food Corp., supra,* 251 Cal.App.2d 864 (a case involving an appeal from a judgment on the merits and not a mere question of pleading) the action failed because all that was shown was that defendant induced a third party to discontinue business with the plaintiff in favor of doing business with the defendant.

tion at trial, prove unacceptable tomorrow as the mores of our market place change and as we require more stringent standards of conduct. (Compare *Katz* v. *Kapper,* 7 Cal.App.2d 1 [44 P.2d 1060] [decided in 1935] with *Guillory* v. *Godfrey,* 134 Cal.App.2d 628 [286 P.2d 474] [decided in 1955].)

In *Greenberg* v. *Hollywood Turf Club, supra,* 7 Cal.App.3d 968, this court said with respect to both the torts of interference with existing and prospective economic advantages that the general principle was "that a party whose conduct causes legal injury should justify himself." Legal injury is caused when something more than mere competition is involved.[7]

█  Turning to the pleading in the instant case, we find that plaintiff has alleged "That the aforesaid conduct of defendants was wrongful and malicious, and *with the intent to injure plaintiff financially* . . . ." (Italics added.)

The underscored allegation broadly read, as it should be on general demurrer, is a sufficient pleading of the intentional nature of defendant's conduct done for other than merely bona fide competitive reasons. It will be for defendants to justify themselves if plaintiff can prove what it has alleged.

The special demurrers of each of the defendants are set forth below.[8]

In *Chicago Title Ins. Co.* v. *Great Western Financial Corp., supra,* 69 Cal.2d 305, the pleading failed because justification (given by a parent corporation to do business with its own subsidiary) appeared on the face of the complaint. (See also, *Culcal Stylco, Inc.* v. *Vornado, Inc., supra,* 26 Cal.App.3d 879.)

[7] "It is evident that the claim for damages is based upon conduct, or, more specifically, language, tending to persuade the public to withdraw its custom from the plaintiff and having that effect to its damage. Such conduct having such effect is equally actionable whether it produces the result by persuasion, by threats or by falsehoods . . . , *and it is enough to allege and prove the conduct and effect, leaving the defendant to justify if he can.* If the conduct complained of is persuasion it may be justified by the fact that the defendant is a competitor, or by good faith and reasonable grounds . . . But all such justifications are defenses and raise issues that are no part of plaintiff's case. . . ." (*American Well Works Company* v. *Layne & Bowler Co.,* 241 U.S. 257, 259 [60 L.Ed. 987, 988-989, 36 S.Ct. 585, 586].) (Italics added.)

[8] Pacific's special demurrer reads: "(a) It cannot be ascertained from the first amended complaint the terms and provisions of the purported 'broker-of-record letter.'

"(b) It cannot be ascertained from the first amended complaint the nature and extent of any duty purportedly owing by this defendant to plaintiff prohibiting the conduct of which plaintiff complains.

"(c) It cannot be ascertained from Paragraph X of the first amended complaint the date and the terms of this defendant's purported agreement to write the policies showing plaintiff as broker of record.

"(d) It cannot be ascertained from the first amended complaint the facts showing

Except for the special demurrers which state that it cannot be ascertained from paragraphs XI and XII how or in what manner defendant's conduct was wilful or malicious, the special demurrers should have been overruled. They are either argumentative in themselves or relate to matters of defendants' own conduct which is presumptively within their knowledge. (See, e.g., *Merlino* v. *West Coast Macaroni Mfg. Co.,* 90 Cal. App.2d 106 [202 P.2d 748]; *Gressley* v. *Williams,* 193 Cal.App.2d 636 [14 Cal.Rptr. 496].)

Special demurrer (e) of Pacific and special demurrer 3 of Signal are well taken and should have been sustained with leave to amend.

The judgment is reversed with directions to overrule the demurrers except Pacific's demurrer (e) and Signal's demurrer 3 and to allow leave to amend as to those demurrers.

Stephens, Acting P. J., and Aiso, J., concurred.

---

the legal significance of the document described as the 'broker-of-record letter.'
."(e) It cannot be ascertained from Paragraphs XI and XII how or in what manner defendant's conduct was wrongful or malicious as alleged therein."
Signal's special demurrer reads: "2. The first amended complaint is uncertain in that it cannot be ascertained therefrom, and particularly from paragraph[s] VII and VIII thereof how the allegedly 'exclusive broker-of-record' letter required this defendant to do business with plaintiff or prevented this defendant from doing business with Realty Associates.
"3. The first amended complaint is uncertain in that it cannot be ascertained therefrom, and particularly from paragraph XII, how or in what manner defendant's alleged conduct was willful or malicious."