[No. A036843. First Dist., Div. Three. Mar. 28, 1989.]

MANUEL F. ABREU, Plaintiff and Appellant, v.
SVENHARD'S SWEDISH BAKERY et al., Defendants and
Respondents.

**COUNSEL**

Sondra J. Thornally for Plaintiff and Appellant.

Moore, Sizoo & Cantwell, Eric. O. Nieman, Wesley Sizoo and Phillip J. Smith for Defendants and Respondents.

**OPINION**

**WHITE, P. J.**—Plaintiff Manuel F. Abreu appeals from a judgment notwithstanding the verdict in favor of defendants Svenhard's Swedish Bakery (Bakery) and Bakery, Confectionery & Tobacco Workers' International Union, Local 119 (Union) in this wrongful termination action. We affirm the judgment.

*Facts and Procedural History*

In August of 1974 plaintiff was hired by Bakery. The following month, pursuant to the collective bargaining agreement then in existence between Bakery and Union, plaintiff became a member of the Union. Plaintiff started working as a janitor and eventually became a foreman in the baking department.

On December 14, 1982, plaintiff got into an altercation with another employee, George Colbert. As a result of the fight, plaintiff's employment was terminated on the following day. George Colbert was also fired, but then rehired. Plaintiff is Caucasian; Colbert is Black.

The week following his termination, plaintiff contacted a union representative in an attempt to obtain reinstatement at Bakery. He was informed that there was nothing that Union could do. Thereafter, plaintiff presented his case at an executive board meeting of Union conducted in January of 1983. In a letter dated January 27, 1983, Union informed plaintiff that it had decided against proceeding to arbitration on his behalf. Plaintiff did not receive the letter until sometime in February or March. Plaintiff subsequently asked to appear before Union's April 1983 executive board meeting; however, he did not appear at that meeting because he "wasn't in the condition for it."

On December 14, 1983, plaintiff filed a complaint in superior court, alleging causes of action for wrongful discharge, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, fraud, negligent misrepresentation and employment discrimination. Although Bakery and Union attempted to remove the action to federal court, the federal court granted plaintiff's motion to remand the matter back to state court.

In February of 1986, defendants moved for summary judgment or, in the alternative, summary adjudication of the issues. Their motion argued that plaintiff's claims were preempted by federal law, his claims were barred by the statute of limitations and that he had failed to exhaust his administrative remedies. The court ruled that all of plaintiff's causes of action except for reverse racial discrimination were preempted by federal law; however, it found there were triable issues of fact as to when plaintiff received notice that Union would not represent him and whether he had exhausted his administrative remedies.

Trial commenced and, after plaintiff rested his case, defendants moved for a partial nonsuit. The court denied the motion for nonsuit based on the statute of limitation issue, but granted the motion for nonsuit on the reverse discrimination cause of action without permitting plaintiff to reopen his case.

The jury eventually returned verdicts in favor of plaintiff and against both defendants.[1]  ■ ■■■■  However, after both defendants moved for a judgment notwithstanding the verdict,[2] the court granted the motions. After the court denied plaintiff's motion for reconsideration, judgment was entered and this appeal followed.

## Federal Preemption

■  Section 301 of the Labor-Management Relations Act (LMRA) governs suits for violation of contracts between an employer and a labor organization.[3] This section does not divest state courts of concurrent jurisdiction to hear collective bargaining suits; however, regardless of where a suit arising out of a collective bargaining agreement is instituted, the action is governed exclusively by federal law. (*Olguin* v. *Inspiration Consol. Copper Co.* (9th Cir. 1984) 740 F.2d 1468, 1472.)

■  The determination of whether an action is preempted by federal law does not rest solely on the drafting of the complaint. "A plaintiff may not . . . avoid federal jurisdiction simply by omitting from the complaint federal law essential to his claim, or by casting in state law terms a claim that can be made only under federal law. Jurisdiction is determined on the basis of the *well-pleaded* complaint. A complaint that is 'artfully pleaded' to avoid federal jurisdiction may be recharacterized as one arising under federal law. [Citations.]" (*Olguin, supra,* 740 F.2d at p. 1472, italics in original.)

■  By failing to directly acknowledge that his work relationship with Bakery was covered by the collective bargaining agreement between Union and Bakery, plaintiff claims that state law governs this action.

However, in his first cause of action plaintiff alleges wrongful discharge based upon written, oral and implied by conduct agreements, and specifically refers to "employer/union contracts" which govern the terms and conditions of his employment. He then realleges the same provision in each of the remaining causes of action.

---

[1] The jury was never instructed on the applicable limitation periods for bringing an action against Bakery or Union.

[2] Plaintiff claims Union did not challenge the verdict by filing posttrial moving papers and, accordingly, it was error to grant judgment NOV in its favor. However, the record reveals that both defendants made oral motions for judgments notwithstanding the verdict. Moreover, a trial judge may grant judgment notwithstanding the verdict on its own motion. (Code Civ. Proc., § 629.)

[3] Section 301 of the LMRA states: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties . . . ." (29 U.S.C. § 185(a).)

■ It is established that wherever an individual contract conflicts with a collective bargaining agreement, the latter necessarily prevails. (*J. I. Case Co.* v. *Labor Board* (1944) 321 U.S. 332, 337-339 [88 L.Ed. 762, 767-768, 64 S.Ct. 576].) ■ Consequently, federal case law holds that where a collective bargaining agreement exists, there generally cannot be a cause of action based on state law for wrongful discharge (*Olguin, supra,* 740 F.2d at p. 1474; *Fristoe* v. *Reynolds Metals Co.* (9th Cir. 1980) 615 F.2d 1209, 1212) or breach of an implied employment contract. (*Buscemi* v. *McDonnell Douglas Corp.* (9th Cir. 1984) 736 F.2d 1348, 1350.) Similarly, state tort claims for intentional infliction of emotional distress, fraud and misrepresentation are preempted when they arise out of an employment relationship governed by a collective bargaining agreement. (*Scott* v. *Machinists Automotive Trades D. Lodge 190* (9th Cir. 1987) 827 F.2d 589, 594; *Moore* v. *General Motors Corp.* (8th Cir. 1984) 739 F.2d 311.)

Plaintiff cites *Garibaldi* v. *Lucky Foods Stores, Inc.* (9th Cir. 1984) 726 F.2d 1367, *Paige* v. *Henry J. Kaiser Co.* (9th Cir. 1987) 826 F.2d 857 and *Caterpillar, Inc.* v. *Williams* (1987) 482 U.S. 386 [96 L.Ed.2d 318, 107 S.Ct. 2425], for the proposition that federal labor laws do not preempt independent state laws for wrongful termination. These cases are inapposite.

■ Both *Garibaldi* and *Paige* involve wrongful discharge actions based on a violation of social policy. The public policy exception was established by the California Supreme Court in *Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 178 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314], which held that an "employer cannot condition employment upon required participation in unlawful conduct by an employee." Federal courts have subsequently recognized that "California's interest in providing a cause of action for violation of public policy or a statute is the enforcement of the underlying statute or policy, not the regulation of the employment relationship." (*Garibaldi, supra,* 726 F.2d at p. 1374.) Consequently, wrongful termination actions based upon a violation of social policy are not preempted by federal law.

In *Caterpillar,* employees who held managerial or positions outside the coverage of the collective bargaining agreement had been promised that if the San Leandro facility of Caterpillar ever closed, the company would provide employment opportunities for them at other company facilities. Caterpillar later downgraded these employees to hourly positions covered by the collective bargaining agreement, then notified them that the San Leandro plant would be closed and they would be terminated. The United States Supreme Court found that Caterpillar had entered into and breached individual employment contracts, the interpretation of which was not dependent upon an interpretation of the collective bargaining agreement.

■ In the instant action plaintiff's employment was terminated for fighting on the job. He did not and could not allege wrongful discharge based on a violation of social policy. Nor did he enter into a separate, independent employment agreement with Bakery; his complaint regarding termination could only be handled through the grievance procedure set out in the collective bargaining agreement. Accordingly, it was proper for the trial court to find that plaintiff's first five causes of action were preempted by federal law.

*Statute of Limitations*

Prior to June 8, 1983, when the United States Supreme Court rendered its decision in *DelCostello* v. *Teamsters* (1983) 462 U.S. 151 [76 L.Ed.2d 476, 103 S.Ct. 2281], the timeliness of actions brought under section 301 was determined by reference to the appropriate state statute of limitations. Although case law was somewhat in a state of flux, it appeared that the statute of limitation in California for causes of action against a union for breach of duty of good faith representation was three years (former Code Civ. Proc., § 338, subd. 1; *Price* v. *Southern Pacific Transp. Co.* (9th Cir. 1978) 586 F.2d 750, 753); the limitation period for causes of action for breach of a written collective bargaining agreement was four years (Code Civ. Proc., § 337; *Barina* v. *Gulf Trading and Transp. Co.* (9th Cir. 1984) 726 F.2d 560, 562) and the limitation period for bringing actions to vacate an arbitration award was 100 days. (Code Civ. Proc., § 1288; *United Parcel Service, Inc.* v. *Mitchell* (1981) 451 U.S. 56, 63 [67 L.Ed.2d 732, 740-741, 101 S.Ct. 1559].)

■ Finding that state statutes of limitation were unsatisfactory vehicles for the enforcement of federal law, *DelCostello* held that in a suit brought against a union directly or against the employer and the union under section 301, courts should apply a statute of limitations of six months as set forth in section 10(b) of the National Labor Relations Act,[4] the period for filing a complaint of unfair labor practice before the National Labor Relations Board.

■ The question then arose as to whether *DelCostello* should be applied retroactively. For at least one year, the Ninth Circuit repeatedly and uniformly denied *DelCostello* retroactive application. (See, e.g., *Barina, supra,* 726 F.2d. 560; *McNaughton* v. *Dillingham Corp.* (9th Cir. 1984) 722 F.2d 1459; *Edwards* v. *Teamsters Local Union No. 36* (9th Cir. 1983) 719 F.2d 1036.) As the *Barina* court reasoned, *DelCostello* established a new princi-

[4] Section 10(b) provides: "[N]o complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made . . . ." (29 U.S.C. § 160(b).)

ple of law and it would " 'produce the most "substantial inequitable results" to hold that [an employee] "slept on his rights" at a time when he could not have known the time limitation that the law imposed on him.' " (*Barina, supra,* 726 F.2d at pp. 563-564.)

However, a short time later, the Ninth Circuit fashioned a limited exception to the rule barring retroactivity. *Glover* v. *United Grocers, Inc.* (9th Cir. 1984) 746 F.2d 1380 and *Aragon* v. *Federated Dept. Stores, Inc.* (9th Cir. 1985) 750 F.2d 1447 hold that *DelCostello* may be applied retroactively when the effect will be to lengthen rather than shorten the time in which the plaintiffs could file their complaints.[5]

Finally, the Ninth Circuit held that a cause of action which occurred prior to the decision in *DelCostello* was barred if not filed within six months after the date of that decision: "We agree with the district court that plaintiffs were not prejudiced in this case. Plaintiffs' cause of action for breach of the collective bargaining agreement accrued when they were discharged on September 9, 1981. *DelCostello* was decided June 8, 1983. Yet plaintiffs, knowing that *DelCostello* had imposed a six-month statute of limitations, waited until September 10, 1984, to file. Unlike claimants whose actions were filed before *DelCostello,* plaintiffs could not reasonably have relied on our previous decisions applying a three-year limitations period borrowed from state law [citation], because *DelCostello* warned plaintiffs that these decisions were no longer good law. Neither could plaintiffs reasonably have relied on our decisions refusing to apply *DelCostello* retroactively to claims filed before *DelCostello* was issued, *see, e.g., Edwards,* 719 F.2d at 1040, to conclude that the three-year limitations period previously borrowed from state law still applied to their claims. Such an approach would deny the Court's decision in *DelCostello* any effect until after the state limitations period, which the Court concluded was inappropriate, had expired. We hold that a cause of action which arose prior to the decision in *DelCostello* is barred if not filed within six months after the date of that decision, June 8, 1983." (*Kelley* v. *International Broth. of Elec. Workers* (9th Cir. 1986) 803 F.2d 516, 518, fn. omitted.)

The *Kelley* holding is applicable to the instant action. Plaintiff's employment was terminated on December 15, 1982. He was advised by way of Union's January 27, 1983, letter that Union would not pursue his wrongful discharge claim. Even if plaintiff did not receive notice that Union would not represent him until February or March, it is clear that his cause of action accrued when he did not appear for the April 1983 executive board

---

[5] It should be noted that the applicable state statute in both *Glover* and *Aragon* was the 100-day period for filing actions to vacate an arbitration award.

meeting. Yet plaintiff waited until December 14, 1983, more than six months after *DelCostello* had been decided, to file his complaint against Bakery and Union. Thus, the action is barred pursuant to *Kelley*.

■ Citing *Ret. Clerks Union Loc. 648* v. *Hub Pharmacy* (9th Cir. 1983) 707 F.2d 1030, plaintiff argues that because he pursued administrative remedies through the National Labor Relations Board and the Department of Fair Employment and Housing and applied for unemployment insurance, the applicable statute of limitations is tolled under the California equitable tolling doctrine. The argument is without merit.

Preliminarily, we note that *Hub Pharmacy* was decided prior to the filing of *DelCostello,* not eight days after that decision as plaintiff asserts. Moreover, *Hub Pharmacy* explicitly states: "Equitable tolling should not be applied in a manner that frustrates national labor-management policy." (*Hub Pharmacy, supra,* 707 F.2d at p. 1033.) To apply state tolling statutes in this case would inevitably frustrate the *DelCostello* court's intent to have a uniform federal statute of limitations period for all section 301 actions.

■ Plaintiff also submits that when the trial court denied defendants' motion for nonsuit, the order denying nonsuit based on the statute of limitations became the law of the case and conclusively established the statute of limitations in this case. Plaintiff misunderstands the law-of-the-case doctrine.

The doctrine of law of the case was aptly described in *Tally* v. *Ganahl* (1907) 151 Cal. 418, 421 [90 P. 1049]: "The doctrine of the law of the case is this: That where, *upon an appeal,* the supreme court, in deciding the appeal, states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout its subsequent progress, both in the lower court and upon subsequent appeal, and, as here assumed, in any subsequent suit for the same cause of action, and this although in its subsequent consideration this court may be clearly of the opinion that the former decision is erroneous in that particular." (Italics supplied, quoted with approval in *People* v. *Shuey* (1975) 13 Cal.3d 835, 841 [120 Cal.Rptr. 83, 533 P.2d 211].) Here, there was no appellate decision. The order denying defendants' motion for nonsuit was not entered as a judgment, it merely was an interim ruling. As such, it was subject to correction at any time up to final judgment even in the absence of newly discovered evidence. (*Blue Mountain Development Co.* v. *Carville* (1982) 132 Cal.App.3d 1005, 1013-1014 [183 Cal.Rptr. 594].)

*Reverse Discrimination*

■ Citing *Huang* v. *Garner* (1984) 157 Cal.App.3d 404, 416 [203 Cal.Rptr. 800], plaintiff contends it was error to grant nonsuit on his reverse

discrimination cause of action without permitting him to reopen his case to correct the evidentiary defects. We disagree.

Before a judgment of nonsuit can be disturbed, there must be some substance to the plaintiff's evidence upon which reasonable minds could differ; proof that raises mere speculation or conjecture is not enough to sustain the plaintiff's burden. (*Campbell* v. *Security Pac. Nat. Bank* (1976) 62 Cal.App.3d 379, 384-385 [133 Cal.Rptr. 77].)

At trial plaintiff presented two witnesses, presumably Caucasian, who testified that they had been fired by Bakery because of alleged absenteeism. Neither witness testified that he had been fired because of his race. Rather, each implied that he had been fired because of union activities. As the trial court observed, "there isn't an iota of evidence that anybody ever even thought of race or mentioned race or talked of race or thought of race."

Plaintiff's counsel then attempted to reopen the case to present evidence that plaintiff's supervisor had relied on false information in his decision to fire plaintiff; i.e., that plaintiff had used a knife during the fight with George Colbert. The trial judge failed to see how this would be useful to plaintiff's reverse discrimination case, and denied her request to reopen the matter.

It is well established that "[a]fter a motion for nonsuit is made in a jury trial (Code Civ. Proc., § 581c), it is the trial court's duty, if so requested, to permit the plaintiff to reopen his case and introduce further evidence, since one of the objects served by the motion is to point out the oversights and defects in the plaintiff's proof so that he may supply, if possible, the specified deficiencies. [Citation.] It is error to refuse plaintiff this privilege and, after such refusal, to grant a motion for nonsuit. [Citations.]" (*Charles C. Chapman Building Co.* v. *California Mart* (1969) 2 Cal.App.3d 846, 858 [82 Cal.Rptr. 830]; see also *Huang* v. *Garner, supra,* 157 Cal.App.3d at p. 416.) However, any error in refusing to allow the plaintiff to reopen the case and present further evidence must be prejudicial to warrant reversal and, on appeal, the plaintiff has the burden of establishing prejudicial error. (*Chapman, supra,* 2 Cal.App.3d at pp. 858-859; *Huang, supra,* 157 Cal.App.3d at p. 418.)

Plaintiff has not explained how the trial court's refusal to permit him to reopen the case has prejudiced him. Indeed, we fail to see how further evidence on whether plaintiff was fired because of fighting with a knife improves his reverse discrimination cause of action. Clearly, he has presented no evidence on a pattern of reverse discrimination at Bakery; nor was any evidence produced that he was terminated because of his race.

The judgment is affirmed.

Barry-Deal, J., and Strankman, J., concurred.