Filed 5/1/15  Ndjongo v. Los Angeles World Airports CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| JEAN NDJONGO, | B248942 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC468368) |
| v. | |
| LOS ANGELES WORLD AIRPORTS, | |
| Defendant and Respondent. | |

APPEAL from judgment of the Superior Court of Los Angeles County, Michael L. Stern, Judge.  Affirmed.

Allman & Nielsen, P.C. and Sara B. Allman; Law Office of Kusion & Campana and David E. Campana for Plaintiff and Appellant.

Vanderford & Ruiz LLP and Rodolfo F. Ruiz for Defendant and Respondent.

_____

# INTRODUCTION

Plaintiff Jean Ndjongo appeals from a judgment of nonsuit in favor of his employer Los Angeles World Airports (LAWA). Plaintiff sued LAWA for racial and national origin discrimination, harassment and retaliation in violation of the California Fair Employment and Housing Act, Government Code section 12900, et seq. (FEHA). In granting LAWA's motion for nonsuit, the trial court concluded, among other things, that Plaintiff failed to present substantial evidence demonstrating race, national origin or retaliatory animus motivated the purported adverse employment actions. We agree with the court's conclusion and affirm.

## FACTS[1] AND PROCEDURAL BACKGROUND

Plaintiff is an African-American man. He was born in Cameroon in East Africa. LAWA is a government entity that manages Los Angeles International (LAX) and Ontario airports.

Plaintiff holds a degree in computer science from Chapman University. He began working for the City of Los Angeles in 1999 as a journeyman electrician in the sanitation department. In 2002, he passed the appropriate test and was promoted to instrument mechanic for LAWA at LAX's central utility plant (the CUP). The CUP supplies heating, air conditioning, hot water, and back-up power to LAX. As an instrument mechanic, Plaintiff's job duties consisted of inspecting, analyzing, calibrating, repairing, and maintaining instrumentation and control systems for those facilities.

---

[1] Here we provide a summary overview of the facts, stating the evidence in the light most favorable to Plaintiff as the party opposing nonsuit. (See *Bolin v. San Bernardino City Unified Sch. Dist.* (1984) 155 Cal.App.3d 759, 767 (*Bolin*).) In the discussion section of this opinion, we provide a more detailed treatment of particular facts, where pertinent to an issue on appeal.

When Plaintiff started at LAWA in 2002, John Dever was his direct supervisor. On Plaintiff's first day of employment, Dever offered another new employee a ride from the human resources facility to the CUP's instrument shop, but told Plaintiff he would have to walk, even though there was room in the truck for a third passenger. At the time, Plaintiff did not think walking three-quarters-of-a-mile to the instrument shop was "a very big issue." He later became convinced Dever's conduct was racially motivated, when he reflected on the fact that the "only difference" between him and the coworker was that the coworker was white.

After his six-month probation period, Plaintiff began to feel Dever treated him differently and intentionally isolated him from his coworkers. Despite excluding Plaintiff from social discussions, Plaintiff testified Dever "always wanted to know how life was [in Cameroon], how we live there."

In March 2004, Plaintiff submitted a letter to Dever complaining of "disparate treatment." Dever reported the complaint to his supervisor, and Plaintiff filed a complaint with LAWA's human resources department, alleging Dever discriminated against him on the basis of race and national origin. LAWA investigated the allegations and determined there was no evidence of racial discrimination.

Following the 2004 complaint, Dever assigned Plaintiff repetitive tasks that required him to work alone, while other employees were assigned to work in pairs. Dever denied Plaintiff's request to go out of state for training, though other employees in the CUP had been allowed to attend training out of state. Plaintiff also complained that Dever refused to give him a copy of a basic instrumentation manual the Department of Water and Power (DWP) distributes to entry level employees, which Plaintiff considered to be a valuable reference guide for his job in the CUP.

Additionally, Plaintiff claimed Dever disciplined him for pretextual violations, such as submitting a backdated vacation request, despite authorizing Plaintiff to take the time off a month earlier. Dever also accused Plaintiff of soliciting food from airport passengers, which Plaintiff denied.

Later in 2004, Dever reported Plaintiff for a security breach after a coworker claimed Plaintiff allowed a passenger into a secured area to smoke a cigarette. Dever's supervisor, Saif Khorshed, conducted an investigation into the report and determined Plaintiff had permitted a flight attendant with security access, not a passenger, to enter the secure area. Although another of Dever's superiors, Tom Wall, suggested to Plaintiff that he could be terminated for the breach, no disciplinary action was taken.

Plaintiff received positive performance evaluations in 2002, 2003, and 2004; however, in 2005 and 2006, Dever gave Plaintiff a rating of "needs improvement."[2]

In July 2006, Plaintiff applied for an electrician supervisor position with LAWA's general services department. Dever gave Plaintiff a negative recommendation, which included a reference to the alleged 2004 security breach. Plaintiff did not receive the promotion.

In January 2007, Plaintiff filed a complaint with LAWA's human resources department concerning Dever's alleged discriminatory conduct dating back to 2004. Among other things, Plaintiff complained he was "the victim of race discrimination since day one," referring to the incident in which Dever instructed Plaintiff to walk to the instrument shop rather than ride in the truck with a white coworker.

LAWA concluded that Plaintiff had been treated differently; however, the reasons for the disparate treatment were "inconclusive." The investigation found Dever (1) excluded Plaintiff from non-work related discussions with other staff, (2) failed to include Plaintiff in the acting supervisor rotation, (3) rated Plaintiff lower than his peers on his 2006 evaluation, and (4) failed to provide Plaintiff with a complete copy of the DWP basic instrumentation manual. Following the investigation, LAWA revised Plaintiff's performance evaluation to remove certain infractions recorded by Dever, permitted Plaintiff to work as acting supervisor in Dever's absence, and instructed Dever

---

[2]     As LAWA points out, Dever gave Plaintiff the positive 2004 performance evaluation after Plaintiff filed his discrimination complaint with human resources.

to give Plaintiff a copy of the DWP manual. On June 19, 2007, LAWA sent Plaintiff a closure letter confirming the investigation's findings.

On August 8, 2007, LAWA's assistant director, Richard Connolly, issued a "Fact-Finding Request" to the human resources department. The request stated "Retaliation against a subordinate employee who filed a discrimination complaint against John Dever" as its basis and recommended "Discharge" as the prescribed corrective disciplinary action. Dever's direct supervisor, Khorshed, signed the request as well. Khorshed did not know whether LAWA took any action on it.

On September 14, 2007, after receiving his 2007 evaluation, Plaintiff complained again to LAWA's human resources department that he had been discriminated against on the basis of his race and national origin. LAWA investigated the claim and concluded there was insufficient evidence to substantiate the charges. On January 25, 2008, LAWA sent Plaintiff a closure letter reporting the outcome of its investigation.

In December 2007, LAWA promoted Dever to airport maintenance superintendent and transferred him out of the CUP instrument shop. After Dever's promotion, Nelson Marquez, a senior instrument mechanic in the CUP, took over as Plaintiff's supervisor.

In 2009 and 2010, Marquez gave Plaintiff "competent" ratings on his performance evaluations. During that period, Plaintiff complained to Marquez and Connolly of disparate treatment concerning work assignments and discipline, however, he never suggested the treatment was racially motivated.

On December 22, 2010, the CUP held a holiday party and employee potluck. Earlier that day, Plaintiff asked Marquez if he could leave work to purchase food for the event. Marquez denied the request. When Plaintiff showed up to the event without food, Marquez berated him in front of his coworkers and the guests in attendance. Marquez followed Plaintiff around the room, scolded him for failing to bring food, and told Plaintiff he should be ashamed of himself, he did not belong there and he should leave.

Plaintiff immediately sent an email to LAWA's human resources department reporting Marquez's conduct at the holiday party. Members of the CUP's management, including Khorshed and Connolly, conducted an investigation into the incident. Marquez conceded he was wrong and apologized to Plaintiff for his conduct. Following its investigation, LAWA disciplined Marquez for inappropriate behavior by a supervisor.

On January 10, 2011, Plaintiff sent another email to LAWA's human resources department concerning the holiday party incident. In the email, Plaintiff expressed frustration that Marquez had not been punished more severely, and, for the first time, suggested Marquez's conduct had been racially motivated. Specifically, Plaintiff asserted Dever had been "mingling with the present supervisor Nelson Marquez, telling him that the black race is inferior."[3] A human resources representative met with Plaintiff and advised him of his options for filing a complaint with the Department of Fair Employment and Housing (DFEH). LAWA opened an internal investigation into the alleged discrimination in March 2011.

On March 11, 2011, Plaintiff filed a complaint with the DFEH. Plaintiff alleged he had been "harassed, discriminated, and retaliated against by his immediate supervisors" at LAWA, including Dever and Marquez. (Capitalization omitted.)

In May 2011, LAWA called Plaintiff into work in the middle of the night to assist with an emergency power outage. Due to the power outage, the lights in the facility were out and, while Plaintiff was reclining in his chair, Marquez took flash photographs of him. Marquez accused Plaintiff of sleeping on the job, but Plaintiff maintained he was awake and had only pretended to be asleep.

---

[3] On January 19, 2011, Khorshed sent an email to Marquez asking him to "refrain from socializing with John Dever" because it was "sending the wrong signal" to Plaintiff. Marquez responded that Dever had stopped by the CUP to chat only once in the past month and he did not see Dever regularly. Nevertheless, Marquez told Khorshed that if Dever showed up again, he would tell Dever he had work to do and excuse himself.

On May 26, 2011, while LAWA's investigation into Plaintiff's January 2011 complaint was still pending, Plaintiff wrote to LAWA's chief airports engineer expressing fear that someone might poison his food at work. On June 1, 2011, LAWA placed Plaintiff on paid administrative leave for his safety while it investigated his claims. Ten days later, Plaintiff requested to be placed on unpaid family medical leave. Plaintiff made the request on the advice of his doctor, who had diagnosed Plaintiff with work-related posttraumatic stress disorder.

LAWA concluded its internal investigation in June 2011, finding no evidence to substantiate Plaintiff's discrimination claims. The investigation, however, raised "other concerns" about Plaintiff's job-related conduct, including allegations that he slept on the job, failed to accurately report his outside employment and made threats against coworkers. LAWA initiated an investigation into the charges in August 2011.

On August 25, 2011, Plaintiff filed the instant action against LAWA. His complaint asserted five causes of action under the FEHA for (1) national origin discrimination; (2) race discrimination; (3) harassment; (4) retaliation; and (5) failure to prevent discrimination.

While Plaintiff's civil action was pending, LAWA completed its investigation of his alleged misconduct. The investigation concluded that Plaintiff had committed six policy violations related to his work performance and behavioral conduct, and proposed a disciplinary suspension of 45 days. LAWA advised Plaintiff of his right to appeal the findings; however, Plaintiff declined the invitation due to his pending lawsuit. Plaintiff served the suspension during his unpaid medical leave, though he used vacation time during that period to receive some income.

The jury trial began on March 4, 2013. Plaintiff presented his case over the course of six days, during which he called several LAWA employees to testify as adverse witnesses.

7

On March 11, 2013, Plaintiff rested his case and LAWA filed its motion for nonsuit. The motion argued much of the purported discriminatory conduct occurred more than one year before Plaintiff filed his DFEH complaint and the evidence was insufficient to extend the applicable limitations period under the continuing violation doctrine. Even setting aside the statute of limitations bar, LAWA argued Plaintiff's evidence was insufficient to establish an adverse employment action, a discriminatory or retaliatory motive by LAWA, or a causal connection between the purported illicit motive and adverse action.

The trial court granted LAWA's motion for nonsuit. In ruling on the motion, the court observed there was no evidence of an adverse employment action, nor evidence that Plaintiff was subject to mistreatment or disparate treatment due to his race, national origin or protected activity under the FEHA. The court also concluded that LAWA's witnesses who testified during Plaintiff's case offered legitimate nondiscriminatory and nonretaliatory reasons for LAWA's conduct, and Plaintiff failed to present sufficient evidence of pretext.

## DISCUSSION

1. *Standard of Review*

"The granting of a motion for nonsuit is warranted when, disregarding conflicting evidence, giving plaintiff's evidence all the value to which it is legally entitled, and indulging in every legitimate inference that may be drawn from the evidence, the trial court determines that there is no evidence of sufficient substantiality to support a verdict in favor of plaintiff." (*Bolin, supra,* 155 Cal.App.3d at p. 767.) "[T]he granting of a nonsuit is reviewed de novo on appeal, using the same standard as the trial court." (*Mejia v. Community Hospital of San Bernardino* (2002) 99 Cal.App.4th 1448, 1458.)

"If the plaintiff's claim is not supported by substantial evidence, then the defendant is entitled to a judgment as a matter of law, justifying the nonsuit." (*Saunders v. Taylor* (1996) 42 Cal.App.4th 1538, 1541 (*Saunders*).) "Although each case must be judged for sufficient evidence on its own peculiar circumstances, a number of general guidelines may be set forth. First, a judgment may be supported by inference, but the

8

inference must be a reasonable conclusion from the evidence and cannot be based upon suspicion, imagination, speculation, surmise, conjecture or guesswork. [Citation.] Thus, an inference cannot stand if it is unreasonable when viewed in light of the whole record. [Citation.] And although an appellate court will normally defer to the trier of fact's drawing of inferences, it has been said: 'To these well settled rules there is a common sense limited exception which is aimed at preventing the trier of the facts from running away with the case. This limited exception is that the trier of the facts may not indulge in the inference when that inference is rebutted by clear, positive and uncontradicted evidence of such a nature that it is not subject to doubt in the minds of reasonable men. The trier of the facts may not believe impossibilities.' [Citations.]" (*Beck Development Co. v. Southern Pacific Transportation Co.* (1996) 44 Cal.App.4th 1160, 1204; *Abreu v. Svenhard's Swedish Bakery* (1989) 208 Cal.App.3d 1446, 1457 (*Abreu*) ["Before a judgment of nonsuit can be disturbed, there must be some substance to the plaintiff's evidence upon which reasonable minds could differ; proof that raises mere speculation or conjecture is not enough to sustain the plaintiff's burden."].)

With these principles in mind, we turn to whether LAWA was entitled to nonsuit as a matter of law.

2. *The Statute of Limitations Bars Claims Based on Conduct that Occurred More than One Year Before Plaintiff Filed His DFEH Complaint*

As it argued in its nonsuit motion, LAWA maintains the statute of limitations bars all FEHA claims based on conduct that occurred more than one year before Plaintiff filed his DFEH complaint. LAWA also contends the evidence was insufficient to consider such conduct under the continuing violation doctrine. In exercising our independent judgment as to whether LAWA was entitled to nonsuit as a matter of law, we "may sustain the granting of the motion on any ground specified in the motion, whether or not it was the ground relied upon by the trial court." (*Saunders, supra,* 42 Cal.App.4th at p. 1542; *Lawless v. Calaway* (1944) 24 Cal.2d 81, 92-94.) Thus, while the trial court did not rely upon the statute of limitations in its ruling, we may consider this ground in reviewing the judgment on appeal. (*Saunders,* at p. 1542.)

9

Under the FEHA, an employee must exhaust the statute's administrative remedy by filing a complaint with the DFEH and obtaining a notice of right to sue before filing a civil action in court.  (*Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 492.)  The timely filing of an administrative complaint is a prerequisite to bringing a civil action for damages under the FEHA.  (*Ibid.*)  "As for the applicable limitation period, the FEHA provides that no complaint for any violation of its provisions may be filed with the [DFEH] 'after the expiration of one year from the date upon which the alleged unlawful practice or refusal to cooperate occurred,' with an exception for delayed discovery not relevant here."  (*Ibid.*, quoting Gov. Code, § 12960, italics omitted.)

Plaintiff filed his complaint with the DFEH on March 11, 2011.  Accordingly, under the foregoing rules, any alleged unlawful practice that occurred before March 11, 2010, cannot be a basis for his FEHA claims, unless the continuing violation doctrine applies.

Under the continuing violation doctrine "an employer is liable for actions that take place outside the limitations period if these actions are sufficiently linked to unlawful conduct that occurred within the limitations period."  (*Yanowitz v. L'Oreal USA, Inc*. (2005) 36 Cal.4th 1028, 1056 (*Yanowitz*).)  "A continuing violation may be established by demonstrating 'a company wide policy or practice' or 'a series of related acts against a single individual.' "  (*Morgan v. Regents of University of California* (2001) 88 Cal.App.4th 52, 64 (*Morgan*).)  "The plaintiff must demonstrate that at least one act occurred within the filing period and that 'the harassment is "more than the occurrence of isolated or sporadic acts of intentional discrimination." [Citation.]  The relevant distinction is between the occurrence of isolated, intermittent acts of discrimination and a persistent, on-going pattern.' "  (*Ibid.*)

Thus, to invoke the doctrine, the evidence must show the employer's actions "(1) [were] sufficiently similar in kind . . . ; (2) have occurred with reasonable frequency; (3) and have not acquired a degree of permanence."  (*Richards v. CH2M Hill, Inc*., 26 Cal.4th 798, 823 (*Richards*); *Yanowitz, supra,* 36 Cal.4th at p. 1059.)  "[P]ermanence" in this context is properly understood to mean "that an employer's statements and actions

make clear to a reasonable employee that any further efforts at informal conciliation to obtain reasonable accommodation or end harassment will be futile." (*Richards,* at p. 823; *Yanowitz,* at p. 1059, fn. 19.) Thus, even if a course of unlawful conduct is established, the continuing violation doctrine ceases to apply "when the course of conduct is brought to an end, as by the employer's cessation of such conduct or by the employee's resignation, *or* when the employee is on notice that further efforts to end the unlawful conduct will be in vain." (*Richards,* at p. 823.)

Plaintiff contends LAWA subjected him to a continuing course of racial discrimination, harassment and retaliation for more than a decade, beginning with his first day of employment on March 10, 2002, and continuing through his suspension in late-2012. During this period, Plaintiff filed four complaints with LAWA's human resources department against two different supervisors—one complaint against Dever in 2004, two against Dever in 2007, and one complaint against Marquez in 2011. Despite the four-year gap between his last complaint against Dever and his sole complaint against Marquez, Plaintiff maintains there was sufficient evidence of a persistent and ongoing pattern of discrimination with adequate frequency to warrant a continuing violation finding. We disagree.

Dever was Plaintiff's supervisor from 2002 until 2007. During that period, LAWA's human resources department investigated Plaintiff's three complaints against Dever and found no evidence of racial discrimination. However, a 2007 investigation did find Dever had subjected Plaintiff to "disparate treatment," though Dever's reasons for the treatment were found "inconclusive." Citing that investigation, Dever's supervisors, Khorshed and Connolly, issued a "Fact-Finding Request" to the human resources department, noting "Retaliation against a subordinate employee who filed a discrimination complaint against John Dever" as its basis and recommending

11

"Discharge" as the prescribed corrective disciplinary action.[4]  Despite the recommendation, in December 2007, LAWA promoted Dever to airport maintenance superintendent and transferred him out of the CUP instrument shop, at which time Marquez took over as Plaintiff's supervisor.

Viewed in the light most favorable to Plaintiff, the foregoing evidence establishes Dever's alleged discriminatory, harassing and retaliatory conduct reached a state of permanence, at the latest, when Dever was promoted and no longer had direct supervisory control over Plaintiff.  At this point, the only reasonable inference is that Plaintiff knew, or should have known, LAWA had no intention of taking corrective disciplinary action against Dever; and, in any event, Dever's promotion and transfer effectively ended his disparate treatment of Plaintiff.  (*Richards, supra,* 26 Cal.4th at p. 823; see *Morgan, supra,* 88 Cal.App.4th at pp. 64-65.)

Despite Dever's promotion in 2007, Plaintiff contends Dever's conduct should be considered under the continuing violation doctrine because the same pattern of discrimination and retaliation persisted with Marquez.  Plaintiff cites two pieces of evidence to support this contention:  a September 2009 email he wrote to Connolly suggesting Marquez was "repeating" Dever's "pattern of treatments"; and testimony regarding a January 2011 email exchange in which Khorshed asked Marquez to refrain from socializing with Dever so as not to send "the wrong signal" to Plaintiff.  Neither supports a reasonable inference of a " 'persistent, on-going pattern' " of discrimination, harassment or retaliation.  (*Morgan, supra,* 88 Cal.App.4th at p. 64.)

---

[4]  LAWA denies that the Request for Fact Finding constituted a finding of retaliation or a recommendation for Dever's termination, citing evidence suggesting the form was merely an initial step in the process of opening an investigation into whether unlawful retaliation actually occurred.  As our standard of review requires that we draw all reasonable inferences from the evidence in favor of Plaintiff, we are bound to accept Plaintiff's competing evidence, including testimony by Khorshed, suggesting the form constituted an admission by LAWA management that Dever engaged in unlawful retaliation.

To begin, the subject evidence shows a nearly two-year gap between Dever's promotion and Plaintiff's first complaint against Marquez—hardly the reasonable level of frequency necessary to invoke the continuing violation doctrine. (*Richards, supra,* 26 Cal.4th at p. 823.) Moreover, though Plaintiff's September 2009 email to Connolly referred to Dever's alleged disparate treatment, Plaintiff never suggested that Marquez was moved by the same racially discriminatory or retaliatory purpose that he claims motivated Dever's conduct. On the contrary, Plaintiff admitted in the email, "*I don't know* if John Dever is trying to get back at me through [Marquez]" and "*I do not know* what I have done to [Marquez], I certainly need to get to the bottom of this to know why I [am] treated differently." (Italics added.) Likewise, Khorshed's January 2011 email to Marquez referred only to Plaintiff's personal "belie[f] that John Dever is 'poisoning you.'" Further, Khorshed raised this issue in the context of warning Marquez against "sending the wrong signal" to Plaintiff, not because Khorshed believed Marquez's actions were racially motivated. In sum, this evidence establishes nothing more than Plaintiff's uncorroborated suspicion that Dever might have influenced Marquez almost two years after Dever left the CUP instrument shop; it does not support a reasonable inference that LAWA permitted a persistent and ongoing pattern of discrimination and retaliation by two different supervisors to continue unabated for more than a decade. (*Richards, supra,* 26 Cal.4th at p. 823; *Morgan, supra,* 88 Cal.App.4th at pp. 64-65.)

Because the evidence was insufficient to invoke the continuing violation doctrine, the statute of limitations bars Plaintiff's claims based on conduct that occurred more than one year before Plaintiff filed his DFEH complaint.

3. *Plaintiff Failed to Establish He Suffered Discrimination or Harassment Because of His Race or National Original*

Among other prohibitions, the FEHA makes it unlawful for an employer "because of the race, . . . color, national origin, [or] ancestry . . . of any person . . . to discriminate against the person . . . in terms, conditions, or privileges of employment." (Gov. Code, § 12940, subd. (a).) This includes "harassment on the basis of race or national origin." (*Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 129; Gov. Code,

13

§ 12940, subd. (j)(1) [it is an unlawful employment practice "[f]or an employer . . . or any other person, because of race . . . [or] national origin . . . to harass an employee"].)

A plaintiff claiming discrimination or harassment in violation of the foregoing provisions has the burden of proving that his or her race or national origin was a "substantial factor" in bringing about the alleged adverse employment decision or hostile work environment. (*Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 375 (*Horsford*); *Thompson v. City of Monrovia* (2010) 186 Cal.App.4th 860, 876 [to establish a prima facie case of a racially hostile work environment, a plaintiff must show, inter alia, "the harassment was based on race"].) Thus, to resist nonsuit, a plaintiff must present "substantial evidence from which [a jury] reasonably could conclude the challenged employment actions were motivated in substantial part by reasons of race." (*Horsford,* at p. 375.)

Plaintiff failed to introduce sufficient evidence to permit a reasonable inference that he was subjected to harassment or an adverse employment action because of his race or national origin. In that regard, Plaintiff cites just two pieces of circumstantial evidence that he claims establish the requisite causal connection, both of which concern conduct by Dever that occurred outside the limitation period. The first concerns Plaintiff's first day of employment, when Dever purportedly gave a ride to a white coworker, while leaving Plaintiff to walk three quarters of a mile to the instrument shop. The second is Plaintiff's testimony about how Dever "always wanted to know how life was over [in Cameroon], how we live there," despite otherwise excluding Plaintiff from social discussions. Setting aside the dubious connection between this conduct and any alleged adverse employment action by Dever, as we discussed above, this evidence cannot be used to support Plaintiff's claims because the conduct occurred outside the limitations period.

As for evidence to establish Marquez was motivated by racial animus—there is none. Plaintiff does not cite, and we have not found, anything of the sort in the record. Rather, the only suggestion that Marquez acted on an illicit racial motivation appears in Plaintiff's uncorroborated complaint to LAWA's human resources department about the holiday party incident. In his complaint, Plaintiff vaguely insinuated that Dever was

14

"still mingling with the present supervisor Nelson Marquez, telling him that the black race is inferior," but Plaintiff failed to provide any details to establish he actually heard or had personal knowledge of such a conversation. Plaintiff's trial testimony was similarly devoid of any basis for the allegation in his complaint; indeed, during his two days on the witness stand, Plaintiff never mentioned such a conversation between Dever and Marquez. At most, the email evidences Plaintiff's *suspicion* about Marquez's motive—nothing more.

All told, Plaintiff's suspicion and vague complaint that Marquez had been influenced by Dever is not substantial evidence that Marquez acted on illicit racial animus. The trial court properly granted nonsuit on Plaintiff's claims for discrimination and harassment based on race or national origin. (See *Abreu, supra,* 208 Cal.App.3d at p. 1457 [affirming nonsuit where there was not " 'an iota of evidence that anybody ever even thought of race or mentioned race or talked of race' "].)

4.      *Plaintiff Failed to Establish LAWA Retaliated Against Him Because He Engaged in Protected Activity*

The FEHA makes it unlawful for any employer "to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." (Gov. Code, § 12940, subd. (h).) To establish a prima facie case of retaliation, the plaintiff must show he or she engaged in a "protected activity," the employer subjected the employee to an adverse employment action, and a causal link existed between the protected activity and the employer's action. (*Yanowitz, supra,* 36 Cal.4th at p. 1042.) In granting nonsuit on the retaliation claim, the trial court concluded, among other things, that Plaintiff failed to establish the requisite causal link.

For purposes of making a prima facie case of retaliation, "the causal link element may be established by an inference derived from circumstantial evidence." (*McRae v. Department of Corrections & Rehabilitation* (2006) 142 Cal.App.4th 377, 388 (*McRae*).) Generally, a plaintiff can satisfy his or her initial burden "by producing evidence of nothing more than the employer's knowledge that the employee engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." (*Ibid.*) However, "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close[.]' " (*Clark County Sch. Dist. v. Breeden* (2001) 532 U.S. 268, 273 (*Clark*).)

Moreover, temporal proximity "only satisfies the plaintiff's initial burden." (*McRae, supra,* 142 Cal.App.4th at p. 388.) " 'Once an employee establishes a prima facie case, the employer is required to offer a legitimate, nonretaliatory reason for the adverse employment action. [Citation.] If the employer produces a legitimate reason for the adverse employment action, the presumption of retaliation " ' "drops out of the picture," ' " and the burden shifts back to the employee to prove intentional retaliation. [Citation.]' " (*Ibid.*, quoting *Yanowitz, supra,* 36 Cal.4th at p. 1042.) "The plaintiff's burden is to prove, by competent evidence, that the employer's proffered justification is mere pretext; i.e., that the presumptively valid reason for the employer's action was in fact a coverup. [Citation.] In responding to the employer's showing of a legitimate reason for the complained-of action, the plaintiff cannot ' "simply show the employer's decision was wrong, mistaken, or unwise. Rather, the employee ' "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them 'unworthy of credence,' [citation], and hence infer 'that the employer

16

did not act for the [. . . asserted] non-discriminatory reasons.' [Citations.]" [Citations.]' [Citation.]" [Citation.]' "[5] (*McRae,* at p. 388.)

Turning to the facts of our case, as we have concluded the statute of limitations bars Plaintiff from asserting a claim for retaliation based on conduct that occurred more than one year before he filed his DFEH complaint, our review will focus on the alleged retaliatory conduct that occurred after March 11, 2010.

Plaintiff first complained of racial discrimination by Marquez in January 2011, following the holiday party incident.[6] The complaint prompted LAWA's human resources department to open an investigation into the alleged discrimination. In March

---

[5]     Though this burden shifting framework "drops from the picture" once a case is submitted to the jury, the analysis is to be applied "at preliminary stages of litigation, such as summary judgment and nonsuit, where the shifting burdens of proof and persuasion permit a sequential analysis of the parties' evidentiary offerings." (*Horsford, supra,* 132 Cal.App.4th at p. 375.)

[6]     Immediately after the holiday party, on December 22, 2010, Plaintiff complained to human resources about Marquez's conduct; however, at the time, he did not suggest Marquez's actions were racially motivated. Rather, Plaintiff's complaint focused on the unfair treatment he felt he received, noting Marquez had refused to let him leave work to get food, yet still berated him for coming to the party empty-handed.

Plaintiff also complained to Connolly in September 2009 of "partial and unfair" treatment by Marquez. But, here too, Plaintiff did not claim this treatment had anything to do with his race, national origin or any other protected status. As the FEHA prohibits retaliation against an employee only when based on the employee's opposition to "any practices forbidden *under this part* or because the [employee] has filed a complaint . . . *under this part*" (Gov. Code, § 12940, subd. (h), italics added), this complaint did not trigger the statute's protections. (See *Yanowitz, supra,* 36 Cal.4th at p. 1046 ["an employee's unarticulated belief that an employer is engaging in discrimination will not suffice to establish protected conduct for the purposes of establishing a prima facie case of retaliation, where there is no evidence the employer knew that the employee's opposition was based upon a reasonable belief that the employer was engaging in discrimination"].)

2011, Plaintiff filed his complaint with the DFEH.[7]  In May 2011, while LAWA's investigation continued, Plaintiff wrote to the chief airports engineer expressing fear that someone might poison his food in retaliation for his complaint.  In response to Plaintiff's concern, on June 1, 2011, LAWA placed him on paid administrative leave.  Ten days later, on the advice of his doctor, Plaintiff asked to be placed on unpaid medical leave, due to a stress-related medical condition.

In the course of investigating Plaintiff's complaint, LAWA interviewed several of Plaintiff's coworkers, who raised concerns about Plaintiff's personal and professional conduct in the instrument shop.[8]  Based on those reports, LAWA opened an investigation into Plaintiff's alleged misconduct in August 2011.  Three months later, on November 22, 2011, LAWA issued Plaintiff a notice of proposed disciplinary action, advising Plaintiff of his right to a hearing regarding a proposed 45-day suspension.  The reasons for the proposed suspension included (1) failure to remain alert and responsive while on duty; (2) failure to perform work assignments adequately or promptly; (3) submitting an inaccurate report of outside business activity; (4) using LAWA equipment for personal purposes without authorization; (5) disrupting the work of other employees; and

---

[7]  Plaintiff notes that in April 2011, a month after he filed his DFEH complaint, Marquez issued Plaintiff a notice of offense, reminding Plaintiff that he had reported to work late more than ten times in the past year and warning Plaintiff that future tardiness "may result in further disciplinary action."  Notwithstanding the temporal proximity between the two events, we agree with the trial court that Marquez's issuance of this notice of offense, which merely warned of future disciplinary action, does not constitute an adverse employment action under the FEHA's anti-retaliation provisions.  (See *Yanowitz, supra,* 36 Cal.4th at pp. 1036, 1052 [an adverse employment action for purposes of establishing retaliation must "materially affect the terms, conditions, or privileges of employment"]; see also *McRae, supra,* 142 Cal.App.4th at p. 387 [observing, "[e]mployers need to be able to manage employees without fear that routine employment decisions, or attempts at improving employee performance, will lead to litigation"].)

[8]  With respect to Plaintiff's discrimination complaint, LAWA's investigation concluded Plaintiff's claims were unfounded, finding "Marquez was a fair or consistent supervisor, and that [Plaintiff] was not treated differently due to his race or country of origin."

(5) making threats to a coworker  The notice detailed the evidence LAWA believed established each alleged infraction.  Plaintiff chose not to participate in the hearing, citing his pending lawsuit against LAWA.  On June 7, 2012, LAWA imposed the proposed suspension, which Plaintiff was allowed to serve during his unpaid medical leave.

The evidence establishes a five-month gap between Plaintiff filing his DFEH complaint and LAWA initiating its investigation into Plaintiff's alleged misconduct that culminated in his suspension.  As discussed, to establish the causal connection element of a plaintiff's prima facie case, the temporal proximity between the plaintiff's protected activity and the employer's retaliatory action must be " 'very close,' " and, generally speaking, a delay of three to four months is insufficient.  (*Clark County, supra,* 532 U.S. at p. 273 [citing cases finding three- and four-month periods insufficient, holding a 20-month period clearly insufficient to suggest causality]; *Hollander v. American Cyanamid Co*. (2d Cir. 1990) 895 F.2d 80, 84-85 [three-month delay insufficient]; *Richmond v. ONEOK, Inc.* (10th Cir. 1997) 120 F.3d 205, 209 [three-month delay insufficient]; *Thomas v. Cooper Lighting, Inc.* (11th Cir. 2007) 506 F.3d 1361, 1364 ["A three to four month disparity between the statutorily protected expression and the adverse employment action is not enough"]; see also *Evans v. Houston* (5th Cir. 2001) 246 F.3d 344, 354 [" 'a time lapse of up to four months has been found sufficient to satisfy the causal connection' " element].)  Be that as it may, we need not dispose of Plaintiff's retaliation claim on this basis, because we agree with the trial court that, even if a prima facie case was established, Plaintiff failed to introduce sufficient evidence to demonstrate the legitimate non-retaliatory reasons, evidenced by LAWA's notice of proposed disciplinary action and corroborated by witness testimony, were pretextual.  (See *McRae, supra,* 142 Cal.App.4th at p. 388.)

For example, LAWA's notice charged Plaintiff with failing to remain alert and responsive while on duty, citing an incident in which Plaintiff was photographed sleeping on the job.  In response to the charge, Plaintiff testified that he was merely "faking" and had "pretended" to be asleep when the photographs were taken, though he never offered a coherent explanation for why he would pretend to sleep when he knew his supervisor and

19

coworker were watching. Regardless, even if Plaintiff was only pretending, his explanation does not rebut LAWA's legitimate belief that Plaintiff was sleeping while on duty. (See *McRae, supra,* 142 Cal.App.4th at pp. 388-389 ["the plaintiff cannot ' "simply show the employer's decision was wrong, mistaken, or unwise" ' "].)

Likewise, with respect to the charge that Plaintiff submitted an inaccurate report of outside business activity, the notice of proposed disciplinary action cited evidence that Plaintiff ran Avis and Dollar rental car businesses while employed at LAX, despite only listing "J & J Ndjongo Investments, Inc." on his report to LAWA human resources. When questioned about why he did not list Avis and Dollar—both of which had operations at LAX—Plaintiff explained his car rental businesses were operated under fictitious names and he listed J & J Ndjongo because it was the entity that generated his W-2. Again, even if Plaintiff's testimony supports the conclusion that he did not intentionally falsify his outside business activity report, it does not demonstrate that LAWA's concern about the report's accuracy was pretextual.

As a final example, in support of the charge that Plaintiff threatened a coworker who had reported Plaintiff for sleeping on the job, LAWA's notice cited a series of emails Plaintiff wrote to the coworker, in which he stated: " 'I can foresee someone getting hurt as a result of all these. There is too much hate and pains in the CUP, give you[r] entire attention to these matters that I described above. Hate to this exten[t] can be lead [*sic*] to people getting hurt.' " Plaintiff did not deny writing the emails, nor did he offer evidence to show LAWA intentionally misinterpreted what he wrote as a pretext for retaliating against him for filing his DFEH complaint. The trial court properly granted nonsuit on Plaintiff's retaliation claim.

5. *Nonsuit Was Properly Granted on the Failure to Prevent Claims*

The FEHA also makes it unlawful for an employer to "fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." (Gov. Code, § 12940, subd. (k).) Logically, an employer cannot be held liable for failure to prevent discrimination or harassment if no discrimination or harassment has occurred. (*Trujillo v. North County Transit Dist.* (1998) 63 Cal.App.4th 280, 289 [addressing failure to prevent

discrimination or harassment claim under former Government Code section 12940, subdivision (i)].)  Thus, because Plaintiff failed to introduce sufficient evidence to establish he was subject to unlawful discrimination or harassment under the FEHA, the trial court properly granted nonsuit on his failure to prevent claim.

6. *Plaintiff's Due Process and Evidentiary Challenges Lack Merit*

Plaintiff contends the trial court denied Plaintiff his right to a fair hearing by interposing its own objections to questions asked by Plaintiff's counsel and, in some instances, striking responsive testimony sua sponte.  We disagree.

Though "[t]he failure to accord a party litigant his constitutional right to due process is reversible per se" (*In re Marriage of Carlsson* (2008) 163 Cal.App.4th 281, 293 (*Marriage of Carlsson*)), not every ruling by a trial court that adversely affects a litigant's evidentiary presentation rises to the level of constitutional error.  On the contrary, the trial court unquestionably "has the power to rule on the admissibility of evidence, exclude proffered evidence that is deemed to be irrelevant, prejudicial or cumulative and expedite proceedings which, in the court's view, are dragging on too long without significantly aiding the trier of fact."  (*Id.* at p. 291.)  It is only when the court abuses this discretion " 'in such manner as to prevent a full and fair opportunity to the parties to *present all competent, relevant, and material evidence* bearing upon any issue properly presented for determination' " that a litigant's due process rights are implicated. (*Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1357)

The trial court has broad authority and a statutory duty to control trial proceedings, including the introduction and exclusion of evidence. (Evid. Code, §§ 320, 352.) Evidence Code section 765 directs the trial court to "exercise reasonable control over the mode of interrogation of a witness so as to make interrogation as rapid, as distinct, and as effective for the ascertainment of the truth, as may be, and to protect the witness from undue harassment or embarrassment."  Because the trial court has the power and the duty to exclude inadmissible, duplicative or unduly prejudicial evidence, "it is well established that where questions are asked which are improper, the court acts within the scope of its duty in refusing to allow them to be answered, even though no objection [is] made.

21

[Citations.]" (*People v. White* (1954) 43 Cal.2d 740, 747; see also *People v. Clark* (1992) 3 Cal.4th 41, 144.)

In arguing the trial court's sua sponte objections exceeded the scope of its discretion and thus deprived Plaintiff of his right to a fair hearing, Plaintiff relies exclusively upon *Marriage of Carlsson, supra,* 163 Cal.App.4th 281. The case is inapposite. In *Marriage of Carlsson* "[t]he trial court essentially ran the trial on a stopwatch, curtailing the parties' right to present evidence on all material disputed issues" and "[u]sing the constant threat of a mistrial" to pressure the appellant's attorney to rush her presentation. (*Id.* at p. 292.) However, the conduct that was "[m]ost damning" in the appellate court's view, and deprived the appellant of fundamental due process, was "the judge abruptly end[ing] the trial *in the middle of a witness's testimony, prior to the completion of one side's case* and without giving the parties the opportunity to introduce or even propose additional evidence." (*Ibid.*, italics added.) We have nothing approaching this level of judicial indiscretion here.

What we have is a series of evidentiary—albeit, sua sponte—objections by the trial court, which were clearly aimed at ensuring the jury received reliable evidence, based on the witnesses' personal knowledge, that would assist the jury in resolving the material factual disputes in the case. For example, several of the court's objections were directed at questions that simply asked the witness to repeat statements written in a document published to the jury. Plaintiff cites one instance, when the court interjected, "The document speaks for itself[,] why don't you ask her what she knows about it?" after Plaintiff's counsel asked the witness to affirm she had written a particular statement in an email. Several of counsel's questions followed this pattern, and the court was reasonably concerned that the questions unduly consumed the jury's time, without eliciting testimony based on the witness's personal knowledge.

Plaintiff also cites multiple occasions in which the court sustained its own objections on relevance grounds. Trial court "rulings that turn on the relevance of the proffered evidence" are entitled to particular deference. (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 281.) We have reviewed the sua sponte relevance

objections Plaintiff cites in his brief and do not find the court's determinations were beyond the bounds of reason. (See *Rufo v. Simpson* (2001) 86 Cal.App.4th 573, 596 (*Rufo*) ["The appellate court may not interfere with the trial court's [relevance determination], unless the trial court's determination was beyond the bounds of reason and resulted in a manifest miscarriage of justice."].) Indeed, we have surveyed the entire trial transcript and are satisfied that the court even-handedly enforced the rules of evidence, without depriving either party of a fair hearing. (See, e.g., *People v. Snow* (2003) 30 Cal.4th 43, 78-82; *People v. Wrigley* (1968) 69 Cal.2d 149, 163.)

Nor do we find any merit to Plaintiff's attacks on the trial court's *in limine* rulings. Plaintiff contends the court improperly excluded evidence demonstrating (1) that LAWA lost or destroyed a memorandum by Khorshed suggesting Dever falsely accused Plaintiff of a security breach in 2004, and (2) that Marquez's conduct at the holiday party violated LAWA's anti-hazing policy. As for the first *in limine* ruling, Plaintiff cannot establish prejudicial error, because Dever's alleged conduct occurred outside the actionable limitations period, as we have explained. As for the second, the trial court properly concluded evidence concerning LAWA's anti-hazing policy would be unduly prejudicial and confusing, because the jury's charge was to determine whether Marquez's conduct violated the FEHA's anti-discrimination provisions, not whether the conduct violated LAWA's anti-hazing policy. (See Evid. Code, § 352; *Rufo, supra,* 86 Cal.App.4th at p. 596.)

Plaintiff has failed to establish that the court's management of the trial proceedings deprived him of a fair hearing or the opportunity to present relevant admissible evidence in support of his claims.

## DISPOSITION

The judgment is affirmed.  Los Angeles World Airports is awarded its costs on appeal.

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KITCHING, J.

We concur:

EDMON, P. J.

ALDRICH, J.

24