Filed 3/5/26  Falsafi v. AutoNation CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| BASTAN FALSAFI,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>AUTONATION, INC. et al.,<br><br>Defendants and Respondents. | G064033<br><br>(Super. Ct. No. 30-2021-01179367)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Deborah C. Servino, Judge. Affirmed.

Workplace Justice Advocates and Tamara S. Freeze for Plaintiff and Appellant.

Kolar & Associates, Elizabeth L. Kolar, Tami S. Crosby, Jon C. Abramson and Chad G. Chapman for Defendants and Respondents.

After his employment was terminated by defendant House of Imports Inc. (HOI), plaintiff Bastan Falsafi sued HOI and its holding company, AutoNation Inc.,[1] for whistleblower retaliation under the Sarbanes-Oxley Act of 2002 (Sarbanes-Oxley; 18 U.S.C. § 1514A) and the Consumer Financial Protection Act (CFPA; 29 C.F.R. § 1985.102 et seq.) The trial court granted AutoNation's motion for nonsuit at the close of the defense case, finding the evidence was insufficient to establish it was plaintiff's employer or joint employer. As to HOI, the jury found plaintiff had engaged in whistleblower activity and HOI was aware of that activity, but it found the evidence was insufficient to raise an inference that plaintiff's whistleblower activity was a contributing factor to his termination—one of the elements of plaintiff's case in chief. The jury never reached the issue of HOI's affirmative defense that it would have fired plaintiff based on wholly legitimate reasons regardless of any protected activity.

On appeal, plaintiff contends (1) the trial court abused its discretion by prohibiting plaintiff from introducing so-called "comparator" evidence at trial, (2) there was evidence of juror misconduct sufficient to mandate a new trial, and (3) the trial court erred by granting nonsuit in favor of AutoNation. We find no reversible error and affirm the judgment.

FACTS AND PROCEDURAL HISTORY

Plaintiff worked as a finance manager at HOI's Mercedes-Benz dealership in Buena Park for approximately a year, beginning in October 2018 and continuing through November 11, 2019, when the company terminated his employment. Plaintiff's job duties included finalizing car

---

[1] AutoNation, Inc. is referred to in this opinion as AutoNation. Collectively, AutoNation and HOI are referred to as defendants.

2

sales, ensuring all paperwork was legally compliant, selling further financial products to customers, obtaining lender approval, and ensuring the necessary documents were sent to the necessary institutions so the transactions could be completed.

Plaintiff filed his complaint in this action on January 15, 2021, against both HOI and AutoNation. After the case was removed to federal court and then remanded, plaintiff limited his claims to whistleblower retaliation under Sarbanes-Oxley and the CFPA, claiming defendants engaged in consumer and bank fraud by forging customers' signatures and falsifying customers' income. Defendants filed a joint answer to the complaint on September 24, 2021.

The jury trial began in early December 2023. On December 20, 2023, at the close of the defense case, AutoNation made an oral motion for nonsuit on the ground the evidence presented was insufficient to show AutoNation was plaintiff's employer or joint employer. AutoNation contended the evidence showed it did not have any employees, it had no control over plaintiff's hiring and termination, it did not employ plaintiff, plaintiff did not make any complaints to AutoNation, the term "AutoNation" is used solely for branding purposes, and AutoNation is merely a holding company. The trial court granted the motion, and the case went to the jury only on plaintiff's claims against HOI.

On January 3, 2024, the jury returned a verdict in favor of HOI. The jury found plaintiff had engaged in a protected activity under both Sarbanes-Oxley and the CFPA and that the HOI decision maker who authorized plaintiff's termination knew about the protected activity. Nevertheless, the jury found the circumstances were not "sufficient to raise

3

an inference that [plaintiff's] protected activity was a contributing factor to his termination."

The court entered judgment in favor of HOI and AutoNation on January 23, 2024.

On February 15, 2024, plaintiff filed a motion for new trial and for judgment notwithstanding the verdict. Defendants opposed the motion. The court denied the motion on March 27, 2024.

Plaintiff timely appealed.

DISCUSSION

I.

EVIDENTIARY RULINGS

Plaintiff contends the trial court made a series of evidentiary rulings at trial that handicapped plaintiff's ability to prove his whistleblower complaints were a contributing factor in his termination, including prohibiting plaintiff from introducing evidence of similar conduct by other employees who were not terminated—i.e., comparator evidence—and prohibiting plaintiff from introducing evidence of defendants' fraudulent conduct. We find no prejudicial error in the court's evidentiary rulings.

*A.  Standard of Review*

We review the trial court's ruling on the admissibility of evidence for abuse of discretion. (*People v. Mataele* (2022) 13 Cal.5th 372, 413.) A ruling on the admissibility of evidence """"will not be disturbed unless . . . the trial court acted in an arbitrary, capricious, or absurd manner resulting in a miscarriage of justice.""" (*Id.* at p. 414.) We may not reverse a judgment or decision "by reason of the erroneous exclusion of evidence" unless there has

4

been a miscarriage of justice. (Evid. Code,[2] § 354 ["A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous exclusion of evidence unless the court which passes upon the effect of the error or errors is of the opinion that the error or errors complained of resulted in a miscarriage of justice . . . ."].)

## B. *Plaintiff Failed to Show Prejudice as a Result of the Court's Exclusion of Comparator Evidence*

Plaintiff contends the trial court prejudicially restricted his ability to show that other finance managers at HOI engaged in the same conduct that HOI cited as the reason for terminating plaintiff's employment, but were not disciplined or terminated, thereby raising an inference plaintiff's whistleblower activity was a contributing factor leading to his termination. Specifically, to rebut defendant's extensive evidence that plaintiff was terminated because he had repeatedly violated company policies and customers repeatedly had complained about him—and not because of any whistleblower activity—plaintiff attempted to introduce evidence that customers had complained about other finance managers and that other finance managers had engaged in the same or similar alleged violations of company policy without being disciplined.[3]

We begin our analysis by describing the elements of plaintiff's two whistleblower claims and the parties' respective burdens of proof, which are materially the same as to both claims.

---

[2] All further undesignated statutory references are to the Evidence Code.

[3] Plaintiff's direct supervisor had a team of five or six finance managers under her supervision.

Plaintiff's first claim, under Sarbanes-Oxley, prohibits an employer whose securities must be registered under federal securities laws from discharging, discriminating against, or retaliating against an employee for reporting employer conduct the employee "reasonably believes" constitutes mail fraud, wire fraud, bank fraud, securities fraud, or a violation of any rule or regulation of the Securities and Exchange Commission (SEC) or any provision of federal law relating to fraud against shareholders. (See 18 U.S.C. § 1514A.) To prevail on a private cause of action under Sarbanes-Oxley, "an employee must prove by a preponderance of the evidence that (1) [he] engaged in protected activity; (2) the employer knew that [he] engaged in the protected activity; (3) [he] suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action." (*Allen v. Administrative Review Bd.* (5th Cir. 2008) 514 F.3d 468, 475–476.)

Sarbanes-Oxley requires that the employee have both a subjective belief and an objectively reasonable belief that the company's conduct constitutes a violation of the relevant law. (*Van Asdale v. International Game Tech.* (9th Cir. 2009) 577 F.3d 989, 1000.) Once a plaintiff proves his protected conduct was a contributing factor in the unfavorable employment action, the burden shifts to the employer to prove by clear and convincing evidence that it would have taken the unfavorable employment action regardless of the employee's protected conduct. (18 U.S.C. § 1514A, subd. (b)(2)(C); see *Livingston v. Wyeth, Inc.* (4th Cir. 2008) 520 F.3d 344, 353.)

Plaintiff's second whistleblower retaliation claim, brought under the CFPA, has the same essential elements. The CFPA provides protection from retaliation in cases where the employee has engaged in protected

6

activity pertaining to the offering or provision of consumer financial products or services. The CFPA protects individuals who provide information to their employer, to the Bureau of Consumer Financial Protection (the Bureau), or to another federal, state, or local government authority or law enforcement agency relating to any violation of (or any act or omission the employee reasonably believes to be a violation of) any provision of the CFPA or any other provision of law that is subject to the jurisdiction of the Bureau, or any rule, order, standard, or prohibition prescribed by the Bureau.

The trial court gave the jury special instructions on both of plaintiff's claims and on HOI's affirmative defense consistent with the law. For both claims, the jury was instructed plaintiff had the burden to prove "the circumstances were sufficient to raise an inference that [plaintiff's] protected activity was a contributing factor to [his termination]." The jury was further instructed that, if plaintiff proved this element of his claim, HOI would then have to establish by clear and convincing evidence that it would have terminated plaintiff's employment based on wholly legitimate reasons regardless of any protected activity. Plaintiff does not contend any of the jury instructions were erroneous.

Turning to the admissibility of evidence, in employment cases, evidence of how the employer treated other similarly situated employees compared with how it treated the plaintiff—referred to as comparator evidence—may be probative to show retaliatory intent and pretext. (*Wawrzenski v. United Airlines Inc.* (2024) 106 Cal.App.5th 663, 672, 687–688, 690; *Gupta v. Trustees of California State University* (2019) 40 Cal.App.5th 510, 519–520; *Iwekaogwu v. City of Los Angeles* (1999) 75 Cal.App.4th 803, 816.) "In general, 'individuals are similarly situated when they have similar jobs and display similar conduct.'" (*Gupta,* at p. 520.)

7

"[T]he 'employees' roles need not be identical; they must only be similar "in all material respects,'" and '[m]ateriality will depend on context and the facts of the case.'" (*Wawrzenski,* at p. 689.)

During pretrial discovery, the trial court granted plaintiff's motion to compel defendants to produce comparator evidence.[4] The only such evidence that is now at issue on appeal is specific email correspondence involving customer complaints that plaintiff unsuccessfully attempted to introduce into evidence at the trial, and certain online (Yelp) reviews plaintiff attempted to ask a witness about—but did not try to admit into evidence—at trial. We discuss each category of evidence below.

During trial, HOI introduced substantial evidence that plaintiff repeatedly violated company policies, even after receiving verbal and written reminders by HOI supervisors that he must comply with them.[5] HOI also introduced substantial evidence of the multiple reasons it terminated plaintiff's employment. HOI's general manager, plaintiff's indirect supervisor who made the decision to terminate his employment, testified he did so not because plaintiff complained to him or anyone else at the dealership regarding potential forgery and fraud; rather, he decided to terminate

---

[4] In granting plaintiff's discovery motion, the court noted the comparator evidence sought by plaintiff is "relevant to whether Defendant singled Plaintiff out in retaliation for whistleblowing by treating him more harshly than other employees who engaged in similar conduct." As the court later stated at trial, however, relevance for purposes of discovery is not the same standard of relevance for purposes of admissibility at trial.

[5] The policies defendants contended plaintiff violated forbade employees from lowering interest rates to entice customers to purchase products without first seeking manager approval, selling warranties to clients with a profit of over $2,000, and writing financing transactions with clients longer than 84 months.

plaintiff's employment because of "customer complaints, general practices that were not great for the customers, taking leases and putting them in long-term loans, selling products over the pricing cap[,] telling customers if they buy product, he'll lower the rate for them and they can cancel it after six months and keep the rate lower"—all of which violated company policy—and also for being "abrasive to co-workers." With respect to customer complaints, the general manager testified the complaints included such things as plaintiff not returning calls, promising customers they could cancel their transactions after six months and then refusing to do so, avoiding customers who came to the dealership to talk to him, submitting customers' loan applications to multiple banks even though the customers asked him not to do so, and telling customers he would lower their interest rate if they also purchased a product.

Plaintiff contends he was prohibited from introducing comparator evidence showing customer complaints about, and similar conduct by, other finance managers to rebut this evidence and to show defendants' purported reasons for terminating plaintiff were a pretext. Specifically, plaintiff contends three exhibits that were not admitted into evidence—exhibits 21, 27, and 116—establish complaints against other finance managers and similar conduct by them, which plaintiff intended to show did not lead to any discipline or termination. We find plaintiff's arguments unpersuasive.

As an initial matter, we note plaintiff incorrectly contends the trial court excluded all comparator evidence. To the contrary, the trial court *permitted* plaintiff's counsel (over defense counsel's objection) to ask plaintiff's direct supervisor whether other finance managers had violated a policy regarding lowering interest rates without manager approval—one of the policies HOI contended plaintiff violated that led to his termination. She testified she could not recall. HOI's general manager also testified about

9

comparator evidence. When asked why he so clearly recalled plaintiff's errors, he testified he "had never seen anything like it with all the finance managers [he had] managed" and it was "just a lot and consistent." In addition, plaintiff's counsel was permitted to ask plaintiff's direct supervisor whether customers sometimes complained about finance managers and had buyer's remorse, and she testified they did, which directly undermines plaintiff's contention the jury was only permitted to hear about customer complaints regarding plaintiff and not about other finance managers.

Turning to the trial exhibits, plaintiff contends exhibit 27 should have been admitted because it shows customers complained about other finance managers who were not disciplined or terminated. Exhibit 27 consists of multiple email communication chains between various customers and various HOI employees, as well as internal company communications, all relating to complaints from customers. All of the complaints appear to be customer service related, including complaints regarding other finance department employees and plaintiff's direct supervisor, and complaints relating to a lack of responsiveness by the finance department generally.

The trial court excluded this exhibit from evidence and sustained defendants' objections to plaintiff's attempt to elicit testimony regarding the exhibit, including objections on hearsay grounds and section 352. We find no abuse of discretion in the court's exclusion of this exhibit. Plaintiff failed to show the emails have anything other than minimal probative value, at most. The emails reflect customers complaining about poor customer service (some of which was unrelated to the financing of the vehicle at issue). Even as to the portions of the complaints that appear to be directed to the finance department, it is not clear from the exhibit or the proffered testimony that all of the complaints were directed at other finance managers (like plaintiff) and

10

whether they involved the same type of complaints HOI contended were part of its reasons for ending plaintiff's employment.

Even setting aside hearsay issues, the trial court did not abuse its discretion in concluding the probative value of this document is substantially outweighed by the undue consumption of time and potential confusion of issues its admission would cause. Admitting these complaints into evidence likely would have caused the trial to devolve into a series of mini trials on each of the customer complaints to ascertain, e.g., whether the complaint was directed at a specific finance department employee (as opposed to a general lack of responsiveness by the finance department); if so, whether the employee who was the subject of the complaint held a position similar or comparable to plaintiff's; the precise reason for and nature of the complaint and whether the complaint was similar in substance to complaints received about plaintiff; the number and frequency of complaints that had been registered against the other employees; and what, if any, disciplinary or remedial measures were taken as to each employee in response to each complaint. We cannot say that, by refusing to permit the trial to be overtaken by such mini trials, the trial court acted in """"an arbitrary, capricious, or absurd manner resulting in a miscarriage of justice.""""" (See *People v. Mataele, supra*, 13 Cal.5th at p. 414.) This is especially true given the testimony that plaintiff was terminated for reasons that went well beyond customer complaints, including repeatedly violating company policies after being warned.

We also cannot conclude, as plaintiff seems to suggest, that without seeing these emails, the jury was misled into believing customers only complained about plaintiff and no other finance managers. Indeed, there

11

was testimony admitted at trial to the contrary, i.e., that customers made complaints generally about the finance department.

For all these reasons, we conclude the court did not err in excluding exhibit 27. Weak comparator evidence is insufficient to raise any inference that plaintiff's protected activity was a contributing factor to his termination. (See *Guz v. Bechtel National Inc.* (2000) 24 Cal.4th 317, 362 [holding summary judgment may be appropriate in favor of an employer accused of discrimination if evidence offered by plaintiff in rebuttal to employer's evidence "is too weak to raise a rational inference that discrimination occurred"].)

Plaintiff also contends he was improperly prohibited from inquiring about negative Yelp reviews, which reflected customer complaints about other finance department employees. We understand this to be a reference to exhibit 21. But, although plaintiff refers to exhibit 21 in his appellate briefing, the trial transcript does not reflect plaintiff ever attempted to admit it into evidence, perhaps because, as plaintiff's counsel acknowledged at trial, "the admissibility of the exhibit may be in question." Simply asking witnesses to testify about negative online reviews would pose obvious hearsay issues, as well as the same "mini trial" problem discussed above with respect to the trial court's exclusion of evidence of other customer complaints under section 352 on the ground of undue consumption of time. Again, we find no error by the trial court in excluding such testimony.

We also find no abuse of discretion in the trial court's exclusion of exhibit 116, a copy of which was not included in the record on appeal but which was identified at trial as records from one particular purchase transaction. Plaintiff argues this exhibit shows another finance manager violated one of the policies plaintiff was accused of violating, and he contends

12

that employee did not suffer discipline or termination as a result. Plaintiff was permitted to ask a witness to authenticate the document, but the trial court excluded it from evidence following multiple objections by defense counsel, including hearsay, section 352, and relevance. For the same reasons discussed above regarding plaintiff's proffered evidence of other complaints, we find no error in excluding this document.

Finally, even assuming the trial court erred in excluding the claimed comparator evidence, plaintiff has failed to show he suffered prejudice as a result. (*F.P. v. Monier* (2017) 3 Cal.5th 1099, 1107–1108.) In other words, viewed in the totality of this case, we cannot conclude the exclusion of this evidence caused the jury to reach a different conclusion than it would have had it been admitted. (*People v. Watson* (1956) 46 Cal.2d 818, 836; see *Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 574.) Substantial evidence would support a finding by clear and convincing evidence that defendant would have terminated plaintiff when it did based on entirely legitimate reasons, even if he had not engaged in whistleblower activity. Defendants introduced extensive evidence that plaintiff repeatedly—and even after receiving multiple warnings—violated company policies regarding the manner in which he was handling financing for customers, such that HOI would have fired plaintiff irrespective of whether he had engaged in whistleblower activity. Plaintiff had every opportunity to, and did, attempt to refute evidence of his repeated violations of policies both on cross-examination of his supervisors and through his own testimony at trial. It is the role of the trier of fact to decide what witnesses to believe, and we find nothing in the record that would warrant overturning the jury's verdict.

## C. The Court Did Not Abuse its Discretion by Excluding Evidence of Bank and Consumer Fraud by Defendants

13

Plaintiff contends the trial court abused its discretion by prohibiting plaintiff from introducing evidence of specific vehicle transactions to show defendants engaged in consumer and bank fraud on behalf of AutoNation. For instance, plaintiff's counsel attempted to introduce several documents as exhibits during trial, which plaintiff contended evidenced fraud and serious misconduct by another employee.

We find no abuse of discretion by the trial court in excluding this evidence. First, the court ruled the documents are hearsay because plaintiff was using them to try to prove that defendants had actually engaged in fraud and misconduct; plaintiff has not argued or shown otherwise on appeal. Second, even if plaintiff could overcome the hearsay objection, any error in not admitting these exhibits was not prejudicial. Contrary to plaintiff's contention that the exclusion of this evidence significantly prejudiced his ability to prove the fraudulent activities he witnessed and complained about, plaintiff was permitted to testify about the conduct he witnessed that he believed constituted bank fraud. The jury found plaintiff engaged in protected whistleblower activity, which necessarily included a finding that plaintiff reasonably believed defendant had committed bank fraud. Plaintiff was not required to prove that fraud actually occurred. Plaintiff cannot show this evidence would have assisted him in proving his whistleblower activity was a contributing factor to his termination.

## II.
### THE TRIAL COURT DID NOT ERR IN DENYING PLAINTIFF'S MOTION FOR NEW TRIAL AND IN EXCLUDING PORTIONS OF THE JURORS' DECLARATIONS

Plaintiff contends the trial court should have granted its motion for a new trial on grounds of juror misconduct. Plaintiff contends the jury injected extraneous legal principles into its deliberations, disregarded the

14

court's instructions regarding the standard of proof, and discussed the wrong burden of proof in answering questions 3 and 7 of the special verdict form.[6] Plaintiff also contends that, in ruling on the motion, the trial court erroneously excluded portions of the jurors' declarations under section 1150 and abused its discretion by considering defendants' untimely opposition papers. We find no error in the court's evidentiary ruling and no abuse of discretion in the court's decision to consider defendants' untimely opposition, to which plaintiff had the opportunity to file a reply brief.

On appeal from the denial of a motion for new trial based on alleged juror misconduct, we independently review the trial court's determinations whether plaintiff was prejudiced by juror misconduct. (*People v. Callahan* (2004) 124 Cal.App.4th 198, 209.) We review the entire record to determine independently whether the claimed acts of misconduct, if they occurred, prevented plaintiff from having a fair trial. (*Iwekaogwu v. City of Los Angeles, supra*, 75 Cal.App.4th at p. 818.)

When a party moves for a new trial based on juror misconduct, the court considers three factors: First, whether the evidence of claimed misconduct is admissible; second, whether the facts establish misconduct; and third, whether the misconduct was prejudicial. (*Whitlock v. Foster Wheeler, LLC* (2008) 160 Cal.App.4th 149, 160.)

There are, however, limitations on the admissibility of declarations from jurors regarding conduct that allegedly occurred during deliberations. Pursuant to section 1150, subdivision (a), "any otherwise admissible evidence may be received as to statements made, or conduct,

---

[6] Questions 3 and 7 of the special verdict form stated: "Were the circumstances sufficient to raise an inference that Plaintiff Bastan Falsafi's protected activity was a contributing factor to his termination?"

15

conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly. No evidence is admissible to show *the effect of such statement*, conduct, condition, or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning *the mental processes* by which it was determined." (§ 1150, subd. (a), italics added.) Put another way, a jury's verdict may only be impeached with proof of *overt acts of misconduct*, objectively ascertainable and subject to corroboration, but not with proof of the subjective reasoning process of individual jurors. (*Province v. Center for Women's Health and Family Birth* (1993) 20 Cal.App.4th 1673, 1678, disapproved on other grounds in *Heller v. Norcal Mutual Ins. Co.* (1994) 8 Cal.4th 30, 41.) As noted by the California Supreme Court, "This rule 'serves a number of important policy goals: It excludes unreliable proof of jurors' thought processes and thereby preserves the stability of verdicts. It deters the harassment of jurors by losing counsel eager to discover defects in the jurors' attentive and deliberative mental processes. It reduces the risk of postverdict jury tampering. Finally it assures the privacy of jury deliberations by foreclosing intrusive inquiry into the sanctity of jurors' thought processes.'" (*In re Hamilton* (1999) 20 Cal.4th 273, 294, fn. 17.)

Under section 1150, "juror declarations are inadmissible to the extent that they purport to describe the jurors' understanding of the instructions or how they arrived at their verdict." (*Bell v. Bayerische Motoren Werke Aktiengesellschaft* (2010) 181 Cal.App.4th 1108, 1125.) Absent an express agreement not to follow the instructions "'or extensive discussion evidencing an implied agreement to that effect,'" a juror's professed understanding of how other jurors applied the trial court's instructions is inadmissible. (*Id.* at pp. 1127–1128.) Juror statements discussing purported

16

confusion about jury instructions and verdict forms are inadmissible to impeach the verdict. (*Eng v. Brown* (2018) 21 Cal.App.5th 675, 710.) If declarations from jurors include both admissible and inadmissible statements, the court may consider only the admissible portions. (*People v. Steele* (2002) 27 Cal.4th 1230, 1261–1262.)

Plaintiff's new trial motion included declarations from four of the jurors; defendants' opposition included declarations from two of the same jurors. According to plaintiff, Juror No. 1 told other members of the jury during deliberations that "there is no smoking gun" regarding whether plaintiff's protected activity was a contributing factor to his termination; the same juror stated during deliberations that California is an at-will employment state, despite not being so instructed by the court, which plaintiff contends caused the jury to create and apply an affirmative defense on behalf of HOI; and the jury improperly discussed the wrong standard of proof applicable to plaintiff's claims. Plaintiff contends all this is proven by the declarations he submitted and constitutes evidence of significant jury misconduct. We disagree.

As the trial court ruled, the declarations offered by both parties contained both admissible allegations of overt acts by jurors, as well as statements that are inadmissible under section 1150. The trial court issued detailed evidentiary rulings in response to the parties' objections to portions of the declarations and considered only the portions of the declarations that it found admissible under section 1150. We find no abuse of discretion in the court's evidentiary rulings.

On the merits, we conclude the trial court properly concluded plaintiff failed to show juror misconduct occurred.

17

First, we agree with the trial court that the statement by Juror No. 1 that "there is no smoking gun" does not rise to the level of misconduct. It was simply a comment regarding that particular juror's view of the state of the evidence.

Second, as to Juror No. 1's question to the rest of the jury whether "they believed Plaintiff had ever violated a policy during his employment with [HOI] and whether they agreed that [HOI] could have fired [plaintiff] due to the violations because California was an at-will employer [*sic*]," we agree with the trial court there was no misconduct shown. There was testimony at trial that plaintiff's employment was at-will, and it is true California is an at-will state. Plaintiff failed to show how this question or comment by Juror No. 1 led the jury to believe at-will employment was an affirmative defense to plaintiff's claims and affected the verdict.

Third, the juror declarations revealed that some members of the jury discussed the phrase "beyond a reasonable doubt" during deliberations. But the evidence also showed that, when that occurred, the jury foreperson informed them the correct standard to apply was "more likely true than not." One juror stated that, after the foreperson reminded them of the correct standard, he did not hear any other jurors mention the phrase "beyond a reasonable doubt." Two of the jurors declared that none of the jurors stated they believed the applicable standard was beyond a reasonable doubt.

We agree with the trial court that the evidence does not reveal juror misconduct. The jury was properly instructed with CACI No. 200, which states: "The parties must persuade you, by the evidence presented in court, that what they are required to prove is more likely to be true than not true. This is referred to as 'the burden of proof.' [¶] After weighing all of the evidence, if you cannot decide that something is more likely to be true than

18

not true, you must conclude that the party did not prove it. You should consider all the evidence, no matter which party produced the evidence. [¶] In criminal trials, the prosecution must prove that the defendant is guilty beyond a reasonable doubt. But in civil trial, such as this one, the party who is required to prove something need prove only that it is more likely to be true than not true."[7] The jury also was instructed that plaintiff bore the burden of proving each of the elements of his two claims by a preponderance of the evidence. Nothing in the record suggests the jurors failed to follow the court's instructions or that the references to "beyond a reasonable doubt" during deliberations impacted the jury's understanding of the instructions and its verdict in any way. (*People v. Sanchez* (2001) 26 Cal.4th 834, 852 ["Jurors are presumed able to understand and correlate instructions and are further presumed to have followed the court's instructions"].)

Plaintiff contends *Glage v. Hawes Firearms Co.* (1990) 226 Cal.App.3d 314, 322–323, supports a finding of jury misconduct in this case. We disagree. In *Glage*, jurors improperly used a dictionary to research the meaning of "preponderance" and then discussed that definition among the jury. The court concluded the dictionary definition of "preponderance" was materially different than and inconsistent with the definition the jury was required to follow because it focused on the "quantity" of evidence. (*Id.* at p. 326.) We do not have such conduct here or anything close to it.

---

[7] Certainly, the fact that jurors in a civil trial mention the criminal "beyond a reasonable doubt" standard is not misconduct. CACI No. 200 itself explicitly discusses that standard, contrasts it with the proper preponderance standard, and makes clear that only the preponderance standard applies.

We find no error in the trial court's denial of the motion for a new trial.

### III.
### PLAINTIFF FAILED TO SHOW REVERSIBLE ERROR REGARDING DISMISSAL OF AUTONATION ON MOTION FOR NONSUIT

Plaintiff appeals the trial court's grant of nonsuit in favor of AutoNation. Plaintiff's theory at trial was AutoNation was plaintiff's employer or his joint employer with HOI.[8]

"A defendant is entitled to a nonsuit if the trial court determines that, as a matter of law, the evidence presented by plaintiff is insufficient to permit a jury to find in his favor." (*Nally v. Grace Community Church* (1988) 47 Cal.3d 278, 291; Code Civ. Proc., § 581c.) "'In determining whether plaintiff's evidence is sufficient, the court may not weigh the evidence or consider the credibility of witnesses. Instead, the evidence most favorable to plaintiff must be accepted as true and conflicting evidence must be disregarded. The court must give "to the plaintiff['s] evidence all the value to which it is legally entitled, . . . indulging every legitimate inference which may be drawn from the evidence in plaintiff['s] favor."' [Citation.] A mere 'scintilla of evidence' does not create a conflict for the jury's resolution; 'there must be *substantial evidence* to create the necessary conflict.'" (*Nally*, at p. 291.)

---

[8] The trial evidence on which plaintiff relied was that AutoNation's name and business address were on his paychecks, plaintiff sold AutoNation branded products, plaintiff was required to follow AutoNation employee handbooks, his email address was @autonation.com, plaintiff's supervisor was employed by AutoNation, plaintiff's correction action and termination notices were on AutoNation documents and contained its logo, and all company policies were from AutoNation.

We review de novo the court's order granting AutoNation's motion for nonsuit. (*Khajavi v. Feather River Anesthesia Medical Group* (2000) 84 Cal.App.4th 32, 43.) "In reviewing a grant of nonsuit, we are 'guided by the same rule requiring evaluation of the evidence in the light most favorable to the plaintiff.' [Citation.] We will not sustain the judgment "'unless interpreting the evidence most favorably to plaintiff's case and most strongly against the defendant and resolving all presumptions, inferences and doubts in favor of the plaintiff a judgment for the defendant is required as a matter of law. '"'" (*Nally v. Grace Community Church, supra*, 47 Cal.3d at p. 291.) To warrant reversal, any error in granting a nonsuit motion must be prejudicial and, on appeal, plaintiff has the burden of establishing prejudicial error. (*Abreu v. Svenhard's Swedish Bakery* (1989) 208 Cal.App.3d 1446, 1457.)

We need not decide whether the trial court erred in granting the motion for nonsuit by AutoNation because plaintiff does not—and cannot—show the error resulted in prejudice to him. The jury found plaintiff did not meet his burden of proof on his claims of whistleblower retaliation against HOI, and we are affirming the judgment. Plaintiff sued AutoNation as his joint employer, making the claims against it *intertwined* with the claims against HOI. Thus, plaintiff is unable to prove the outcome would have been any different had the jury decided the same claims as to AutoNation. (*Gonzalez v. Nowhere Beverly Hills LLC* (2024) 107 Cal.App.5th 111, 125; see *Krohn v. Patrick* (1936) 12 Cal.App.2d 339, 340.)

21

## DISPOSITION

The judgment is affirmed. Respondents shall recover costs on appeal.


GOODING, J.

WE CONCUR:


DELANEY, ACTING P. J.


SCOTT, J.